# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Fifth Third Bank, N.A. v. Rosen*, 2011 IL App (1st) 093533

| | |
|---|---|
| Appellate Court Caption | FIFTH THIRD BANK, N.A., Not Individually, But as Successor Cotrustee of the Leon Rosen Trust for the Benefit of Adrienne Phillips, and as Successor Cotrustee for the Benefit of Jennifer Sher; and ADRIENNE PHILLIPS, Plaintiffs-Appellants, v. MYRNA ROSEN, Individually, and as Executor of the Estate of Leon Rosen and as Successor Cotrustee of the Leon Rosen Trust, Defendant-Appellee (Loren J. Mallon and Howard A. Balikov, Defendants). |
| District & No. | First District, Fifth Division<br>Docket Nos. 1-09-3533, 1-10-1068 cons. |
| Filed | September 23, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over the distribution of the assets of a trust, the trial court erred in granting defendant's motion for a determination that the assets should be distributed according to a formula that had been deleted by amendments made to the trust by the settlor, regardless of the fact that the application of the amended formula may have effectively disinherited defendant; therefore, the trial court's finding and its award of attorney fees to defendant were reversed, and the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 02-CH-22812; the Hon. Kathleen Pantle, Judge, presiding. |
| Judgment | No. 1-09-3533, Reversed and remanded.<br>No. 1-10-1068, Vacated. |

| Counsel on Appeal | Thomas C. Crooks, of Chicago, and Rollin J. Soskin, of Rollin J. Soskin & Associates, Ltd., of Lincolnshire, for appellants. |
| | |
| | Susan H. Booker, of Levun, Goodman & Cohen, LLP, of Northbrook, for appellee. |
| | |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. Justices Cahill and R. Gordon concurred in the judgment and opinion. |

## OPINION

¶ 1 Plaintiffs, Fifth Third Bank, as successor cotrustee of the Leon Rosen Trust for the benefit of Adrienne Phillips and as successor cotrustee for the benefit of Jennifer Sher, and Phillips, individually, filed an action against defendants Myrna Rosen (Myrna), individually and as executor of the estate of Leon Rosen, Loren J. Mallon and Howard A. Balikov[1] seeking an accounting of the estate of Leon Rosen and the "Leon Rosen Revocable Trust," alleging a breach of fiduciary duties, and the imposition of a constructive trust on assets wrongfully converted to Myrna's exclusive use and benefit. Myrna filed a motion for summary determination of major issues, which the trial court granted.

¶ 2 Plaintiffs appeal, arguing that the trial court erred (1) in its determination that the assets of the "Leon Rosen Revocable Trust" were to be distributed 50% to Myrna and 25% each to Phillips' trust and Sher's trust; (2) in requiring plaintiffs to name Bank of America as a party defendant; and (3) in awarding attorney fees to Myrna.

¶ 3 Leon Rosen (Leon) died on May 24, 1999. His wife, Frieda Rosen (Frieda), predeceased him on February 26, 1993. At the time of Leon's death, his descendants consisted of his two daughters Myrna and Phillips, and one granddaughter Sher. Sher is Phillips' daughter.

¶ 4 In October 1982, Leon executed the "Leon Rosen Revocable Trust" (Rosen Trust). Leon amended the Rosen Trust four times: amendment No. 1 and restatement of the Rosen Trust were executed in September 1992, amendment Nos. 2 and 3 were executed in February 1994, and amendment No. 4 was executed in August 1998. In September 1992, Leon executed his will and also executed a first codicil to his will in August 1998. Myrna was appointed the cotrustee of the Rosen Trust and executor of Leon's estate. Bank of America was the original cotrustee with Myrna for the Rosen Trust.

¶ 5 Also in October 1982, Frieda executed her own trust. An amendment and restatement

_____

[1]Defendants Mallon and Balikov were dismissed from the action in 2003 and are no longer involved in this case.

-2-

were executed in September 1992. In the trust documents, upon her death and in the event that she predeceased Leon, Frieda provided for the creation of two trusts: the "Frieda Rosen Marital Trust" and the "Frieda Rosen Family Trust." Under the terms of these trusts, Leon possessed a testamentary power of appointment over both of Frieda's trusts and, in his will, he could direct the distribution of the assets of Frieda's trusts. Under the codicil to Leon's will, the assets from both of Frieda's trusts were to be divided and allocated in equal parts to Sher and Phillips, to be held in their individual trusts established under the Rosen Trust.

¶ 6    Paragraph 3.02, as executed in amendment No. 4, directed the trustee to pay funeral expenses, legally enforceable claims against Leon or his estate, estate administration expenses, and "all inheritance, estate and succession taxes" from "the principal of the trust." Paragraph 3.05, as executed in amendment No. 4, further provided that all payments under the provisions of this article "shall be charged against the principal of the trust, without apportionment or proration irrespective of any tax apportionment statute or similar rule of law."

¶ 7    Paragraph 4.01, as executed in amendment No. 4, of the Rosen Trust outlined the division of the trust assets as follows:

"4.01 Division of Trust. Upon my death (herein called the 'Date of Division'), the Family Trust property shall be divided and distributed as hereinafter provided. If there is no descendant of mine living on the Date of Division, the Trustee shall distribute the Family Trust property as provided in paragraph 4.07 below. If there is a descendant of mine living on the Date of Division, the Trustee shall divide and distribute the Family Trust property hereinafter provided in this paragraph 4.01.

(a) An amount equal to the positive difference (if any) between the Sher Distributable Share (defined below) and the Appointed Property (defined below) shall be divided and allocated in as many equal separate parts as may be necessary to provide as follows:

(i) one (1) equal part for my granddaughter JENNIFER SHER ('JENNIFER') or, if JENNIFER does not survive me, per stirpes, for her then living descendants, if any; and

(ii) one (1) equal part for my daughter ADRIENNE J. SHER ('ADRIENNE'), if she survives me.

The parts or portion thereof for ADRIENNE shall be distributed to, and held as part of, the Trust for ADRIENNE established under paragraph 4.02 below. The parts or portion thereof for JENNIFER shall be distributed to, and held as part of, the Trust for JENNIFER established under paragraph 4.04 below. ***

(b) The balance of the Family Trust property shall be distributed to MYRNA, outright and free of trust, if MYRNA is living on the Date of Division, but if MYRNA is not living on the Date of Division, such amount shall be allocated, per stirpes, to MYRNA'S descendants who are living on the Date of Division ***.

The term 'Sher Distributable Share' shall mean an amount equal to fifty percent (50%) of the sum of (1) the value of the Appointed Property (defined below), and (2) the value of my 'taxable estate' (within the meaning of Code Section 2051), as finally determined

-3-

for federal estate tax purposes. The term 'Appointed Property' shall mean any property held by the FREIDA [*sic*] ROSEN REVOCABLE TRUST dated October 5, 1982 which is subject to a testamentary power of appointment exercised by me in accordance with my Will. For purposes of determining the value of the Appointed Property, (A) any property includible in my gross estate (within the meaning of Code Section 2031) for federal estate tax purposes shall be valued as finally determined for federal estate tax purposes, and (B) any property not included in my gross estate shall have a value determined as of the date of my death."

¶ 8    In March 2002, plaintiffs filed their verified complaint for accounting and other relief. Plaintiffs alleged that on the date of Leon's death the assets of the Rosen Trust totaled $5,576,250, including property that passed to the trust. The complaint further alleged that after payment of taxes and expenses, the net value of the Rosen Trust was $2,497,346. Plaintiffs asserted that pursuant to amendment No. 4 of the Rosen Trust, the remaining assets in the Rosen Trust should have been distributed $1,248,673 to Phillips' trust and $1,088,673 to Sher's trust. Plaintiffs alleged that defendants incorrectly distributed the proceeds of the Rosen Trust as follows: $1,504,407 to Myrna, $469,675 to Phillips' trust, and $532,965 to Sher's trust.

¶ 9    Count I of the complaint sought an accounting of Leon's estate and the Rosen Trust from the date of Leon's death to the present, including the distribution of Trust assets and payment of state and federal taxes. Count II alleged a breach of fiduciary duties by defendants by acting in contravention to the terms of Leon's documents and, as a result, plaintiffs received substantially less than the amount they were entitled under Leon's documents. Count III alleged that Myrna had been unjustly enriched and was in possession of an amount in excess of $1.5 million that should have been distributed to plaintiffs and asked for a constructive trust to be imposed on the assets wrongfully converted by defendants.

¶ 10    In April 2003, plaintiffs filed an amended complaint that added Bank of America as a respondent in discovery, but other than that addition, plaintiffs made identical allegations as the original complaint. Defendants Mallon and Balikov were dismissed from the action in December 2003. In November 2004, Myrna filed her first motion for summary judgment and plaintiffs filed a cross-motion for summary judgment. Myrna argued that the Rosen Trust directed that the assets be distributed 50% to Myrna, 25% to Phillips' trust, and 25% to Sher's trust. Plaintiffs contended that the gift to Myrna was a residuary gift that should have carried the burden of the taxes on the estate. In April 2005, the trial court denied both motions in a written order. The judge held that summary judgment was improper at that time because defendants' motion for summary judgment did not explain how the figures were calculated and did not yield the figures referenced in the complaint. The written order also found Myrna's portion from the trust was not a residuary gift and was "every bit as specific as the bequest" to Phillips and Sher, and the estate taxes were to be paid from the principal of the trust, without regard to the subsequent distribution of the trust.

¶ 11    In February 2006, Myrna filed her second motion for summary judgment and plaintiffs also filed a second motion for summary judgment. Both motions were denied in April 2006. In January 2008, plaintiffs were granted leave to file a second amended complaint.

¶ 12 The second amended complaint included calculations of plaintiffs' portion of the Rosen Trust. Plaintiffs now alleged that the full amount remaining in the trust after payment of debts, expenses and taxes should have distributed to plaintiffs' trusts in equal shares of $1,248,673. Instead, the complaint contended that defendants incorrectly distributed the Rosen Trust as follows: $1,428,188 to Myrna and $332,995.71 each to Phillips' trust and Sher's trust. The second amended complaint continued to raise the same counts against defendants.

¶ 13 In March 2008, plaintiffs filed their third motion for summary judgment, which was denied in May 2008. In June 2009, Myrna filed a motion for summary determination of major issues and a motion for summary judgment for failure to join a necessary party, arguing that Bank of America as the original cotrustee of the Rosen Trust was a necessary party to the action. In August 2009, the trial court granted plaintiffs leave to file a third amended complaint joining Bank of America as a defendant.

¶ 14 Plaintiffs filed their third amended complaint in September 2009. The third amended complaint joined Bank of America as a defendant. The complaint also alleged additional facts regarding the trust assets and distributions. Plaintiffs alleged that in May 2000, Bank of America proposed a distribution plan for the Rosen Trust, the "Frieda Rosen Marital Trust" and the "Frieda Rosen Family Trust," which Myrna approved. The plan valued the assets of the Rosen Trust, after payment of debts, expenses and taxes, at $2,148,19.25, the assets of the "Frieda Rosen Marital Trust" at $434,314.35, and the assets of the "Frieda Rosen Family Trust" at $482,703.24. Under the plan, Myrna and Bank of America properly allocated one-half of both of Frieda's trust to each of Phillips' and Sher's trusts.

¶ 15 The plan also allocated the Rosen Trust with $1,482,187.83 to Myrna and $332,995.71 to each of Phillips' and Sher's trusts. Plaintiffs alleged that under the wording of the formula contained in the Rosen Trust, the assets of the Rosen Trust should have been allocated in one-half portions to Phillips' and Sher's trusts. Plaintiffs further alleged that the plan approved by Myrna and Bank of America failed to follow the distribution terms of paragraph 4.01 and also allocated the taxes among all of the beneficiaries. The third amended complaint raised a new count of breach of fiduciary duties against Bank of America. In response to Myrna's motion for summary determination of major issues, plaintiffs asked the trial court to reconsider their previous motion for summary judgment.

¶ 16 In October 2009, the trial court granted Myrna's motion for summary determination of major facts. The court stated that it had reviewed the various summary judgment orders and made the following summary determination of major issues:

"1. Leon Rosen's intent must be gleaned from examining the entirety of Leon's estate planning documents; therefore, the Formula contained in ¶ 4.01 of the Fourth Amendment to the Trust cannot be read in isolation;

2. Leon Rosen intended that the assets of his Trust and Frieda's Assets (pursuant to his limited power of appointment over such Assets) be distributed 50% to Myrna, 25% to Adrienne's Trust and 25% to Jennifer's Trust;

3. The Formula provides for the disposition of the rest of Leon's Trust assets after the payment of debts, taxes and expenses;

4. Myrna should not solely bear the burden of the estate taxes;

5. Leon did not intend to disinherit Myrna; and

6. An application of the Formula proffered by Plaintiffs is contrary to Leon's intent."

¶ 17　　In December 2009, the trial court issued an order pursuant to Supreme Court Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Jan. 1, 2006)) that there is no just reason for delaying enforcement or appeal of the October 2009 order. Plaintiffs filed the notice of appeal in case No. 1-09-3533.

¶ 18　　Myrna filed a petition for attorney fees incurred in the case. In April 2010, the trial court entered an order which granted Myrna's petition and awarded her $154,792.82, in legal fees and costs, to be paid from the Rosen Trust. Plaintiffs filed the notice of appeal in case No. 1-10-1068 based on this award of attorney fees.

¶ 19　　These appeals followed.

¶ 20　　On appeal, we first consider plaintiffs' argument that the trial court erred in determining that the Rosen Trust called for the assets of the Rosen Trust and both of Frieda's trusts to be distributed 50% to Myrna and 25% each to Phillips' trust and Sher's trust.

¶ 21　　A summary determination of major issues allows a party to seek a summary determination of "one or more, but less than all, of the major issues in the case, and the court finds that there is no genuine issue of material fact as to that issue or those issues." 735 ILCS 5/2-1005(d) (West 2008). "A *de novo* standard of review applies when there is no genuine issue of material fact and the trial court has made a ruling of law." *In re Estate of King*, 304 Ill. App. 3d 479, 480 (1999). The denial of a motion for summary judgment is not appealable because it is interlocutory in nature. *In re Estate of Funk*, 221 Ill. 2d 30, 85 (2006). An exception exists where the parties filed cross-motions for summary judgment and one motion is granted while the other is denied. *Funk*, 221 Ill. 2d at 85.

¶ 22　　Plaintiffs contend that the assets of the Rosen Trust should have been distributed consistent with the formula set forth in paragraph 4.01, while Myrna responds that, by considering all the documents in Leon's estate plan, his intention was to distribute the assets of his trust and Frieda's trusts as 50% to Myrna and 25% each to Phillips' trust and Sher's trust.

¶ 23　　"In interpreting trusts, which are construed according to the same principles as wills, the goal is to determine the settlor's intent, which the court will effectuate if it is not contrary to law or public policy." *Citizens National Bank of Paris v. Kids Hope United, Inc.*, 235 Ill. 2d 565, 574 (2009). "The intent sought is not that presumed to have been in the testator's mind but rather that which was expressed by language in the will." *In re Estate of Laas*, 134 Ill. App. 3d 504, 509 (1985). To determine the settlor's intent, courts examine the plain and ordinary meaning of the words used in the instrument, taking into consideration the entire document. *Kids Hope United*, 235 Ill. 2d at 574. Accordingly, the provisions of a will or trust should not be read in isolation. *Bank of America, N.A. v. Carpenter*, 401 Ill. App. 3d 788, 797 (2010).

¶ 24　　However, extrinsic evidence will only be admitted to aid construction if the trust document is ambiguous and the settlor's intent cannot be determined. *Peck v. Froehlich*, 367

Ill. App. 3d 225, 232 (2006). "Ambiguity can be found if the language is reasonably or fairly susceptible to more than one interpretation." *Peck*, 367 Ill. App. 3d at 232. When the language of the document is clear, the court should not modify the document or create new terms. *Peck*, 367 Ill. App. 3d at 232.

¶ 25    Here, neither party contends that the Rosen Trust document is ambiguous nor do they challenge the figures used to calculate the division of the trust. The parties agree that the value of the taxable estate on the date of division, as reported by Myrna on the federal estate tax return, was $6,412,475. It is also uncontested that the value of the "appointed property," any property held by the "Frieda Rosen Revocable Trust," subject to Leon's testamentary power, was $907,783.

¶ 26    Plaintiffs argue that we should use these values in the formula contained in paragraph 4.01 of amendment No. 4 to the Rosen Trust. Paragraph 4.01(a) states that "[a]n amount equal to the positive difference (if any) between the Sher Distributable Share *** and the Appointed Property *** shall be divided and allocated in as many equal separate parts as may be necessary to provide" for one equal part for Sher's trust and one equal part for Phillips' trust.

¶ 27    The Sher distributable share is an amount equal to 50% of the appointed property ($907,783) and the taxable estate ($6,412,475). Thus, the value of the Sher distributable share is ($907,783 + $6,412,475) x 50%, which equals $3,660,129. The next step in determining the value is to ascertain the "positive difference" between the Sher distributable share ($3,660,129) and the appointed property ($907,783), which equals $2,752,346 to be divided equally between Sher's trust and Phillips' trust. Paragraph 4.01(b) then allocates the balance of the trust property to Myrna.

¶ 28    However, the parties agree that after the payment of all debts, expenses, and taxes, the Rosen Trust had a value of $2,148,179, less than the value reached under the formula in paragraph 4.01(a). Plaintiffs argue that the language of the Rosen Trust indicates that the $2,148,179 should be given in equal shares to Sher's trust and Phillips' trust with no balance remaining for Myrna.

¶ 29    Myrna contends that this computation is contrary to Leon's intent as ascertained from all of Leon's estate documents. In her analysis of the estate documents, Myrna specifically notes the prior version of paragraph 4.01, which allocated the trust property with 50% to Myrna and 25% each to Sher's trust and Phillips' trust. However, amendment No. 4 provided that the prior paragraph 4.01 was deleted in its entirety and a new paragraph 4.01 was substituted. Myrna's reliance on a deleted former version of the paragraph outlining the division of the family trust is improper.

¶ 30    Myrna asserts that the Rosen Trust documents contain one or more scrivener's errors or latent ambiguities. Myrna notes that she has no issue with plaintiffs' definition of "taxable estate" or the amount of Leon's "taxable estate," but instead argues that the use of the term "taxable estate" in dividing the trust property was a mistake because certain assets were counted twice and assets were included that were not part of the trust property. In her brief, Myrna does not point to any examples of a scrivener's error or specifically note what latent ambiguities have been created. However, in the memorandum in support of her second

summary judgment motion, Myrna contended that the attorney who drafted paragraph 4.01 in amendment No. 4 committed a scrivener's error by using the words "taxable estate" in determining the Sher distributable share rather than "Family Trust property" or "residue." Myrna's reasoning was that the application of the formula, as drafted, is "illogical and nonsensical."

¶ 31     A scrivener's error is defined in Black's Law Dictionary as:

"***clerical error***. An error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination. • Among the boundless examples of clerical errors are omitting an appendix from a document; typing an incorrect number; mistranscribing a word; and failing to log a call. A court can correct a clerical error at any time, even after judgement has been entered.–Also termed *scrivener's error* \*\*\*." Black's Law Dictionary 563 (7th ed. 1999).

¶ 32     Here, Myrna contends that the term used to calculate the division of trust assets was a scrivener's error. Under the legal definition, such a significant error would not be considered a scrivener's or clerical error. "Thus, an error that is 'decisional or judgmental' instead of 'mechanical or technical' is not a scrivener's error." *Handelsman v. Handelsman*, 366 Ill. App. 3d 1122, 1135 (2006) (quoting *Schaffner v. 514 West Grant Place Condominium Ass'n*, 324 Ill. App. 3d 1033, 1040 (2001)). "An error that is the deliberate or conscious result of the exercise of judicial or professional judgment, or a misapprehension of the law or the facts, will not qualify as a scrivener's error." *Handelsman*, 366 Ill. App. 3d at 1135.

¶ 33     The language of paragraph 4.01 specifically states that the Sher distributable share was 50% of the value of the appointed property and "the value of my 'taxable estate' (within the meaning of Code Section 2051), as finally determined for federal estate tax purposes." The use of the term "taxable estate" was not an inadvertence, but was a clearly defined value used in Leon's estate documents. "Technical terms with established meanings are presumed to be used according to their technical meanings unless they are otherwise explained." *Laas*, 134 Ill. App. 3d at 508. The term "the value of my 'taxable estate' (within the meaning of Code Section 2051), as finally determined for federal estate tax purposes" is a technical term with an established meaning and ascertained value. Myrna has not shown how the use of this established term was an inadvertence and we decline to find such an error. The use of this term was a deliberate decision by an attorney and cannot be considered a scrivener's error.

¶ 34     Myrna also argues that plaintiffs' construction of paragraph 4.01 reveals latent ambiguities because the amount awarded to Sher's trust and Phillips' trust is greater than the remaining value of the Rosen Trust after payment of debts, expenses and taxes. Myrna contends that this application renders the formula ambiguous because the result is impossible to satisfy and Myrna would not receive any of the Trust property. "A latent ambiguity occurs when the will appears clear on its face but some fact external to the will reveals that a description of a bequest or of a legatee in the will is inadequate to determine who or what was intended by the testator." *Coussee v. Estate of Efston*, 262 Ill. App. 3d 419, 424 (1994). When latent ambiguities are found, the court may use extrinsic evidence to determine the intent of the testator. *Laas*, 134 Ill. App. 3d at 509.

¶ 35     Myrna does not point to any specific ambiguity that is created under plaintiffs'

application of the formula, other than her previous claim that the result of the formula cannot be fulfilled with the trust property. Contrary to Myrna's assertion, the trust documents do not contain a latent ambiguity such that the documents are unclear as to what Leon intended. Paragraph 4.01 outlined a precise calculation with ascertained values to divide the trust property and is not ambiguous.

¶ 36    We find the opinion in *In re Estate of Laas* to instructive. There, the testator allocated 75% of her assets in a will and codicil: 25% of the estate in bequests to various relatives and 50% of her " 'adjusted gross estate as finally determined for Federal estate tax purposes' " in a charitable remainder unitrust which was to provide 5% of the net fair market value to the decedent's son annually for his life with the remainder to be divided among three charities. *Laas*, 134 Ill. App. 3d at 506. The charities sought construction of the will and codicil, arguing that the testator's intent was thwarted by the executor's interpretation because their bequests would abate. *Laas*, 134 Ill. App. 3d at 506-07.

¶ 37    The charities first asserted that the term "adjusted gross estate as finally determined for Federal estate tax purposes" was ambiguous because the adjusted gross estate is defined in the tax code provisions for marital deductions and the testator was a widow. The reviewing court rejected this argument, finding that the testator "expressly provided that the term 'adjusted gross estate' be given its estate tax meaning. The fact that no marital deduction is involved does not render ambiguous the use of the phrase 'adjusted gross estate as finally determined for Federal estate tax purposes.' " *Laas*, 134 Ill. App. 3d at 508.

¶ 38    Next, the charities argued that the will and codicil were latently ambiguous because under their terms the preresiduary legacies would abate. The court noted that the rule allowing for the use of extrinsic evidence when a latent ambiguity existed was applied where there is an incorrect description of a bequest or of a legatee or the description fits more than one object or person. *Laas*, 134 Ill. App. 3d at 510. The charities asserted that their claim was analogous because the testator's gift was made impossible. The court disagreed and found that the "fact that some abatement of the preresiduary bequests may occur does not necessarily demonstrate latent ambiguity in the bequests" and the partial abatement did not constitute a latent ambiguity. *Laas*, 134 Ill. App. 3d at 510.

¶ 39    The charities further contended that the trial court's interpretation rendered some of the provisions of the will and codicil meaningless. The charities argued that the provisions of the will and codicil providing for residuary gifts and the percentages of the estate that passed to the preresiduary legatees were not given their full effect because under the trial court's interpretation the residue was completely abated and the presresiduary legatees were partially abated. *Laas*, 134 Ill. App. 3d at 510-11. The reviewing court found that the trial court did not err in its interpretation, but "rather made a finding which simply will result in abatement of certain bequests." *Laas*, 134 Ill. App. 3d at 511. The *Laas* court noted that "the existence of a residuary clause does not necessarily indicate an intent to make a present gift to the charities, but may have been considered necessary to prevent a bequest from lapsing in the event that a preresiduary beneficiary predeceased the decedent." *Laas*, 134 Ill. App. 3d at 511. Finally, the charities asserted that the payment of the death taxes out of the residue was error because the taxes could not be satisfied if the preresiduary legacies were paid first. The reviewing court found that the provisions of the will made it clear that the death taxes were

to be paid from the residue, and absent such a provision, the burden of estate taxes continues to fall on the residue. *Laas*, 134 Ill. App. 3d at 511-12.

¶ 40   Similar to *Laas*, Myrna's claims regarding Leon's intent, scrivener's error and latent ambiguity are premised on the fact that her share of the Rosen Trust was abated under the formula in paragraph 4.01, as executed in amendment No. 4. Contrary to Myrna's arguments, the amended estate documents do not dictate a division of trust property as 50% to Myrna and 25% each to Sher's trust and Phillips' trust. The deleted paragraph 4.01 did distribute the trust property in that manner, but the fact that Leon executed an amendment to paragraph 4.01 demonstrated his intent not to distribute the trust property in that manner. While Myrna contends that this interpretation of the estate documents has, in effect, "disinherited" her, the estate documents indicate otherwise. Though Myrna may not receive any of the property from the Rosen Trust, Myrna did receive proceeds from life insurance, joint tenancy accounts and property from Leon's other estate documents.

¶ 41   We conclude that the trial court erred in granting Myrna's motion for summary determination of major issues. Leon's estate documents do not support the trial court's finding that the assets of the Rosen Trust were to be distributed 50% to Myrna and 25% each to Sher's trust and Phillips' trust. Rather, paragraph 4.01, as adopted in amendment No. 4, expressly outlined a formula with defined terms to distribute the trust assets and should have been followed by the circuit court. Accordingly, we reverse the trial court's granting of Myrna's motion for summary determination of major issues, grant plaintiffs' motion for summary judgment, and remand for further proceedings consistent with this court's decision.

¶ 42   Next, plaintiffs contend that the trial court erred in awarding attorney fees that Myrna incurred in defense of this action. The trial court awarded $154,792.82 to Myrna from the funds remaining in the Rosen Trust. Plaintiffs argue that this award was in error because the fees were not incurred in either the management or protection of the Rosen Trust.

¶ 43   Paragraph 8.01(M) of the restatement of the Rosen Trust allows the trustee "[t]o be reimbursed for all reasonable expenses, including attorneys' fees, incurred in the management and protection of a trust." Here, plaintiffs argue that the fees were not incurred in the "protection" of the trust as the action challenged the disbursement of the trust assets and the Rosen Trust was not a party to this action.

¶ 44   "It is well established that a trust may be lawfully required to bear the necessary expenses of its own administration and preservation, including the payment of necessary attorney fees." *In re Trusts of Strange*, 324 Ill. App. 3d 37, 42 (2001). Further, "a trustee may be entitled to reimbursement for reasonable attorney fees related to the administration and preservation of the trust." *Strange*, 324 Ill. App. 3d at 42. However, when the legal services rendered are not in the interest of the estate, then the claim for fees must be rejected. *In re Estate of Riordan*, 351 Ill. App. 3d 594, 598 (2004).

¶ 45   In *Riordan*, one heir filed a claim seeking compensation for providing care for the decedent prior to her death and two other heirs hired an attorney to defend against the compensation claim despite the appointment of a special administrator to avoid any conflict of interest. The heirs were successful in their defense, but the court determined that attorney fees were not appropriate because the decision to hire their own counsel did not benefit the

estate. *Riordan*, 351 Ill. App. 3d at 598.

¶ 46    In the present case, Myrna is not entitled to attorney fees as the fees were not incurred for the management or protection of the Rosen Trust. As we have already concluded, Myrna, as the trustee, improperly divided the assets of the Rosen Trust in a manner that was contrary to the language of the trust. Such actions did not confer any benefit on the trust. Myrna incurred attorney fees in defense of her own conduct in distributing the trust assets, not for the management and protection of the trust. Accordingly, the trial court erred in awarding $154,792.82, to Myrna and we vacate that order.

¶ 47    Finally, we dismiss the portion of the appeal regarding the trial court's order requiring plaintiffs to join Bank of America as a necessary party. We find that order is not final since there is a count pending against Bank of America for breach of fiduciary duties and no Rule 304(a) language was included in the order to make it final and appealable. Accordingly, we lack jurisdiction to consider this claim of error.

¶ 48    Based on the foregoing reasons, we reverse the circuit court's granting of Myrna's motion for summary determination of major issues, grant summary judgment in favor of plaintiffs, and remand for further proceedings in appeal No. 1-09-3533. In appeal No. 1-10-1068, we vacate the circuit court's order awarding attorney fees to Myrna.


¶ 49    No. 1-09-3533, Reversed and remanded.

¶ 50    No. 1-10-1068, Vacated.