# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Ruby v. Ruby*, 2012 IL App (1st) 103210

---

| | |
|---|---|
| Appellate Court Caption | MARTIN RUBY, MICHELLE RUBY, BENNETT RUBY, PATRICIA RUBY, MARCY BAIM, HOWARD BAIM, and GARY BAIM, Plaintiffs-Appellants and Cross-Appellees, v. BERNICE RUBY, Individually and as Trustee of the Irwin Ruby Trust, Defendant-Appellee and Cross-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-3210 |
| Opinion filed | February 17, 2012 |
| Modified Opinion filed | May 17, 2012 |
| Rehearing denied | May 24, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over the proceeds of a trust created by defendant's deceased brother, the trial court, in plaintiffs' action for a declaratory judgment and a mandatory injunction to obtain the proceeds that had been transferred by defendant's brother from the initial trust to a second trust, erred in entering summary judgment for defendant on her claim that her brother's gift to plaintiffs in the first trust adeemed when her brother transferred the assets to the second trust, and the cause was remanded for a determination of the appropriate gift to plaintiffs, since the doctrine of ademption did not apply to the circumstances of the case, and, further, the trial court should have granted plaintiffs summary judgment to the extent that the *in terrorem* clause of the trust was unenforceable under the facts of the case; additionally, the reviewing court lacked jurisdiction to address joint tenancy issues. |

| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CH-30152; the Hon. Daniel A. Riley, Judge, presiding. |
|---|---|
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Robert A. Weisman and Matthew W. McQuiston, both of Chicago, for appellants. |
| | Gutman & Associates, LLC, of Chicago (Jeffrey K. Gutman, of counsel), and Tootelian Law Firm, LLC, of Hoffman Estates (Robert J. Tootelian, Jr., of counsel), for appellees. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion. Presiding Justice R. Gordon and Justice Palmer concurred in the judgment and opinion. |

**OPINION**

¶ 1     This case involves a dispute over the proceeds of a trust. Plaintiffs, Martin Ruby, Michelle Ruby, Bennett Ruby, Patricia Ruby, Marcy Baim, Dr. Howard Baim, and Gary Baim, appeal the trial court's order granting in part summary judgment in favor of defendant, Bernice Ruby, and against plaintiffs. Plaintiffs contend the trial court erred in finding that the gift at issue had adeemed. Plaintiffs further contend the trial court erred in denying their cross-motion for summary judgment regarding the enforceability of an *in terrorem* clause in the trust and that defendant was not entitled to the assets in the trust account. Defendant cross-appeals the trial court's denial of her motion for partial summary judgment on the latter issues. Based on the following, we affirm in part and reverse in part and remand this cause for further proceedings.

¶ 2                                    FACTS

¶ 3     In the 1980s, defendant and her brother, Irwin Ruby, set up a joint tenancy brokerage account ending in number 1962. Irwin managed the account with the help of Richard Lazer, a stockbroker at David A. Noyes & Company. The account was carried under Irwin's social security number. Defendant and Irwin lived together in a condominium that they purchased in 1980. Neither was married or had any children. In 2002, due to a change in clearing houses at the brokerage firm, Irwin and defendant signed an agreement related to the joint tenancy account known as a medallion agreement. At that time, the account was given the number

ending in 1159.

¶ 4     In 2002, Irwin and defendant hired Howard Gopman, an attorney, for their individual estate planning purposes. In July 2004, Irwin created a trust. Irwin was the named trustee and defendant was the successor trustee. The clause at issue, article fourth, section 1, of the trust, named plaintiffs as the beneficiaries of the contents of the account ending in 1159. Article fourth, section 2, of the trust called for the distribution of specified dollar amounts to specified individuals totaling $215,000. Article fourth, section 3, of the trust called for the distribution of specified dollar amounts to specified charities totaling $40,000. Article fifth called for the distribution of the condominium to two of the plaintiffs as tenants in common pursuant to the terms of article twenty-fifth. Article twenty-fifth called for defendant to receive a life estate in the residence with all expenses paid by the trust. Article seventh detailed the administration and distribution of the trust estate. Specifically, article seventh, section 1, stated: "Upon my death, the trust shall place the remaining trust estate into one trust for my sister, BERNICE RUBY. Such trust shall be disposed as hereinafter provided." Article seventh, section 2, called for the distribution to "any beneficiary *** such portions or all of the principal" as he or she requested from time to time. Article seventh, section 3, further provided: "During the life of the beneficiary, the trustee may in the trustee's discretion pay to or use for the benefit of such beneficiary or his or her descendants so much or all of the income and principal of such trust as the trustee from time to time determines to be required or desirable for the education and best interests of the beneficiary and his or her descendants, adding any income not so paid to the principal." Article twenty-eighth provided an *in terrorem* clause such that any beneficiary that contested the validity of the trust, sought to prevent the implementation of the trust, or who initiated proceedings to construe any provision of the trust and "such proceedings [were] deemed to be without merit by any court" forfeited his right to the benefits of the trust.

¶ 5     In August 2004, Irwin transferred all of the assets from the joint tenancy account ending in 1159 into a newly created trust account ending in 5122. At that time, the assets totaled $1,205,932.23. Irwin also transferred the deed to the condominium into the trust. Although defendant alleges on appeal that she was unaware of the transfers, defendant admitted in her deposition that she and Irwin had deeded the condominium into the trust account on September 28, 2004, and that she signed the deed. Defendant said Gopman never explained it to her and that she knew she signed something for the title. According to the deposition testimony of Lazer, the new account was necessary because the brokerage firm required a new account when title changed. Irwin received monthly account statements.

¶ 6     Irwin died on January 7, 2006. At the time of his death, there were no assets in the account ending in 1159. The assets in the trust account ending in 5122, however, totaled approximately $1,436,000. Gary was the executor of Irwin's will and, for some time after Irwin died, there was confusion as to whether he was a cotrustee. According to his deposition testimony, Gary assisted defendant following Irwin's death. The pair opened a bank account under both of their names with the intention of distributing Irwin's assets according to his wishes. Gary testified that the new account was initially opened with funds from Irwin's savings. At some point, it became clear that defendant was the successor trustee. Defendant sent a letter to plaintiffs in April 2006 advising them that they each were to receive 25% of

the assets in the account ending in 1159. However, when defendant had dispersed all of the funds in the newly created account, she informed Gary that "there was not enough cash, she'd like to liquidate some stocks. And that [he] should check with [Howard, Marty, and Bennett]." Plaintiffs agreed. Defendant made the distributions named in article fourth, section 2, to the specified individuals, including $10,000 each to the children of Howard Baim and Gary Baim, and to the charities named in article fourth, section 3, for a grand total of $255,000.

¶ 7    In April 2006, defendant withdrew $103,000 from the trust to pay for her attorneys and some beneficiaries of the trust. In May 2006, defendant withdrew $121,261.65 from the trust. During her deposition, defendant could not recall how the money was spent, but speculated that she used it to pay for Irwin's funeral. In February 2007, defendant withdrew $180,000 and could not recall how it was used.[1] In October 2007, defendant withdrew $90,000 that she thought "most of" was used to pay her lawyers.[2] Defendant testified at her deposition that she withdrew the money from the trust account and transferred it into a Chase account that she referred to as the "condo account." Historically, according to defendant, the dividends from the joint tenancy account were used for condominium expenses. After Irwin's death, defendant continued to deposit the dividend checks into the "condo account."

¶ 8    On February 8, 2007, defendant's attorney sent a letter to plaintiffs enclosing a check for $30,000. In her deposition, defendant stated that the account ending in 1159 was closed and, therefore, plaintiffs could not receive the 25% called for in the trust. As a result, defendant "thought [she] should give them something," so she gifted $30,000. Plaintiffs, through their attorney, sent a letter to Gopman dated April 20, 2007, inquiring "if and when [plaintiffs] will receive an accounting of the Trust and whether they should expect to receive a copy of a Trust Income Tax Return and a Form K-1." The letter went on to say that "there is no desire on the part of any of my clients to cause any disruption in Bernice Ruby's financial affairs. They merely wish to know the status of the Trust and its assets."

¶ 9    On October 19, 2007, plaintiffs filed a complaint for declaratory relief and request for a mandatory injunction. On December 22, 2008, defendant filed an amended counterclaim seeking: (1) reformation of the trust; (2) a finding that the gift in article fourth, section 1, had adeemed and that the *in terrorem* clause effectively revoked the gift; (3) a declaratory judgment for the condominium to be conveyed out of the trust and to her; and (4) a finding that she was entitled to one half of the property in the trust account. Defendant filed a motion for summary judgment claiming that she was entitled to at least one half of the assets in the trust account. Plaintiffs filed a cross-motion for partial summary judgment claiming defendant was not entitled to the assets in the trust account. On January 26, 2010, the trial court denied the parties' motions and cross-motions for summary judgment.

----

[1] The account statement reflects that, in February 2007, $184,339.55 was withdrawn from the trust.

[2] The account statement reflects that, in October 2007, $98,101.07 was withdrawn from the trust.

¶ 10    On February 25, 2010, defendant filed a motion for partial summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2006)) requesting a declaration that the gift in article fourth, section 1, had adeemed and that the *in terrorem* clause applied. On April 16, 2010, plaintiffs filed a response and a cross-motion for summary judgment. On September 28, 2010, the trial court granted partial summary judgment to defendant, finding that the gift in article fourth, section 1, had adeemed. The trial court, however, denied partial summary judgment to defendant, finding that the *in terrorem* clause was not applicable. The trial court's September 28, 2010, order contained language pursuant to Illinois Supreme Court Rule 304(a) (eff. Jan. 1, 2006), such that the order was "final and appealable and there was no just cause to delay enforcement or appeal."

¶ 11    Plaintiffs appeal the January 26, 2010, order and the September 28, 2010, order. Defendant cross-appeals the trial court's September 28, 2010, order denying, in part, defendant's motion for summary judgment seeking to enforce the *in terrorem* clause.

¶ 12                                    ANALYSIS

¶ 13    Summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits, when viewed in a light most favorable to the nonmoving party, demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006); *Bank of America, N.A. v. Carpenter*, 401 Ill. App. 3d 788, 795, 929 N.E.2d 570 (2010). Where the parties file cross-motions for summary judgment, as they did here, they concede there are no genuine issues of material fact and invite the court to decide the questions presented as a matter of law. *Carpenter*, 401 Ill. App. 3d at 795. We review a trial court's decision regarding summary judgment *de novo*. *Id*. at 794.

¶ 14                                 I. Ademption

¶ 15    Plaintiffs contend the trial court erred in finding the gift in article fourth, section 1, of Irwin's trust had adeemed where, even though the account number bearing the assets had changed, the assets remained available for distribution and Irwin's intent was clear that he wanted plaintiffs to receive the gift.

¶ 16    The doctrine of ademption is the "extinction, alienation, withdrawal[,] or satisfaction of the legacy or devise by some act of the testator by which an intention to revoke is indicated." *Brady v. Paine*, 391 Ill. 596, 600-01, 63 N.E.2d 721 (1945). In *Bollman v. Pehlman*, 352 Ill. App. 3d 1203, 1206, 817 N.E.2d 584 (2004), the Fourth District elaborated, "[i]n other words, when a testator bequeaths a specific item of property to someone but then disposes of the item before dying, the bequest is said to be 'adeemed,' and the devisee cannot inherit either that item or its value. The rule typically operates on direct bequests from an estate ***." Based on our research, the ademption rule has not been applied in the context of a trust. The *Bollman* court held that the rule did not extend to a testamentary trust where the trustee's actions caused the trust to no longer possess the specific bequest because it was not the testator's actions that caused the loss of the property. *Id*. at 1207. However, "[w]hen the specifically devised property is absent from the estate, Illinois courts have been willing to

inquire into why, in search of evidence of the testator's intent." *Id*. at 1206.

¶ 17 Plaintiffs argue that the disfavored doctrine of ademption does not extend to trusts. In the event we find that the theory does apply, plaintiffs argue that ademption could not have occurred here because the assets in question remained in the newly numbered trust account and were available for distribution. Moreover, plaintiffs argue that Irwin did not demonstrate an intent to revoke the gift.

¶ 18 In contrast, defendant argues that the trial court was correct in concluding that the gift to plaintiffs had adeemed where the specified account in the trust was effectively closed when Irwin opened the trust account and transferred all of the assets into it from the account ending in 1159. Accordingly, defendant argues that the gift in question no longer existed and Irwin demonstrated his intent to destroy it. Defendant primarily relies on the fact that, according to Gopman, Irwin insisted on specifying the number of the account to be gifted in article fourth, section 1, and that account did not contain any assets at the time of Irwin's death. Defendant further relies on Gopman's deposition testimony describing Irwin as a knowledgeable and active investor that regularly reviewed his account statements and took no action to change the account number in his trust despite observing for over a year prior to his death that the account held no assets. Moreover, defendant argues that Irwin's trust would be rendered meaningless if the assets in the trust account were distributed to plaintiffs because the other bequests named in the trust, *i.e.*, to the specified individuals in article fourth, section 2, and to the charities in article fourth, section 3, as well as the residuary estate to defendant herself, could not be made.

¶ 19 When interpreting a trust, a court's goal is to ascertain the settlor's intent using the same principles as those used to interpret a will, namely, by examining the plain and ordinary meaning of the words used in the instrument within the context of the entire document. *Rosen*, 2011 IL App (1st) 093533, ¶ 23. "If possible, the court should construe the will or trust so that no language used by the testator is treated as a surplusage or rendered void or insignificant. [Citation.] 'Every word, phrase and clause in a will should be given effect, if possible, and where one construction of a will would render a portion of it meaningless and another construction would give effect to all provisions and all language, the construction giving effect to the latter construction will be adopted.' [Citation.]" *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172-73, 582 N.E.2d 120 (1991). A court will effectuate the settlor's intent "if it is not contrary to law or public policy." *Citizens National Bank of Paris v. Kids Hope United, Inc.*, 235 Ill. 2d 565, 574, 922 N.E.2d 1093 (2009). A court additionally may consider the circumstances surrounding the execution of the trust to determine the settlor's intent. *Department of Mental Health & Developmental Disabilities v. Phillips*, 114 Ill. 2d 85, 93, 500 N.E.2d 29 (1986). When the language of the document is clear and unambiguous, a court should not modify or create new terms. *Rosen*, 2011 IL App (1st) 093533, ¶ 24. However, where the language of a trust is ambiguous and the settlor's intent cannot be determined, a trial court may rely on extrinsic evidence to aid construction. *Id*. " 'Ambiguity can be found if the language is reasonably or fairly susceptible to more than one interpretation.' " *Id*. (quoting *Peck v. Froehlich*, 367 Ill. App. 3d 225, 232, 853 N.E.2d 927 (2006)).

¶ 20 Because we are to use the same principles to ascertain a settlor's intent as those used to

interpret a will and since the theory of ademption looks to intent, we see no reason why the concept should not be considered here.

¶ 21 The disputed clause, article fourth, section 1, of the trust provided: "Upon my death, the Trustee shall distribute the contents of my Account at David A. Noyes & Company, Account No. ***1159, including cash and securities, in equal shares of twenty-five (25%) per cent to each [of] the following three husbands and wives and one individual: (a) Martin Ruby and Michele Ruby ***; (b) Bennett Ruby and Patricia Ruby ***; (c) Dr. Howard M. Baim and [Marcy] Baim ***; and (d) Gary Baim ***." Consequently, it is clear that, at the time Irwin created his trust, he intended to provide plaintiffs with the assets in the account ending in 1159. It is equally clear, pursuant to article fourth, sections 2 and 3, that Irwin intended to provide a total of $255,000 in gifts to the named individuals and charities. Further, it is clear, pursuant to article seventh, section 1, that the residuary of the estate was to be given to defendant. The question that remains is what effect, if any, did Irwin's subsequent opening of the trust account and transfer of the assets in the account ending in 1159 to the account ending in 5122 do to those gifts?

¶ 22 The plain language of the trust instructed defendant to distribute "the contents" of the account ending in 1159. The trust failed to anticipate any future course of action related to that account, *i.e.*, the transfer of the account assets, as was the case here, or the closing of the account due perhaps to significant losses. As a result, we find the trust language was ambiguous and look to extrinsic aids to determine Irwin's intent.

¶ 23 Initially, however, the simple application of the plain language of the disputed trust clause demonstrates that the "contents" of the account ending in 1159 were ascertainable and available for distribution despite existing in a different account. Defendant's argument that distributing to plaintiffs the assets that had been transferred from the account ending in 1159 to the trust account ending in 5122 necessarily would have invalidated the gifts provided for in article fourth, sections 2 and 3, requires an interpretation that renders some of the trust language void or insignificant in contravention of the rules of trust interpretation. See *Donovan*, 145 Ill. 2d at 172-73. Rather, in order to provide meaning to Irwin's wishes as written in the trust, Irwin must have anticipated that his trust account would contain assets in addition to the "contents" of the account ending in 1159. Our review of the record confirms as much. As far as we can tell by the record, after Irwin opened the trust account ending in 5122, he transferred therein the contents of the account ending in 1159, as well as the deed to the condominium he shared with defendant and later transferred therein the assets of a money market account.

¶ 24 Moreover, Gopman's deposition testimony reveals that during the course of his estate planning and editing of the trust, Irwin repeatedly expressed his desire to give the contents of the joint tenancy account ending in 1159 to plaintiffs. At his deposition, Gopman referred to memoranda he prepared during the estate planning and editing process. Relying on those memoranda, Gopman testified that in June 2003, Irwin considered having the disputed gift pass to plaintiffs *after defendant's death*. However, in May 2004, Irwin's trust was drafted and thereafter accepted by Irwin as reflected in the final trust so that plaintiffs were to receive the gift *upon Irwin's death*. According to Gopman, Irwin said that he was aware that most of his estate would not be for the benefit of defendant and "that she is agreeable and *** has

her own estate." As of May 2004, Gopman noted that Irwin would be leaving the account ending in 1159 to plaintiffs, "$255,000 to charities and private persons. [Irwin] would also give Bernice the value of a separate money market account to be established at Noyes." According to Gopman's calculations, the balance of the residuary estate was less than $80,000. Tellingly, Irwin changed title to the account from joint tenancy to a trust account to protect the gift created by his trust, thereby evidencing an intent to prioritize plaintiffs' gift. Construing the act of changing title and thus creating a newly numbered account just one month after creating the trust to mean that Irwin no longer intended to provide the gift to plaintiffs as described in the trust would be absurd and render article fourth, section 1, meaningless. Further, according to Howard and Gary, Irwin called a meeting in the summer of 2005, which was attended by Howard, Martin, and Bennett, to inform them that he had created a trust in which they were named beneficiaries. We find that these actions demonstrate Irwin's clear intent that plaintiffs receive the contents of the account ending in 1159. We, therefore, conclude that the trial court erred as a matter of law in finding that the gift had adeemed.

¶ 25                                              II. *In Terrorem* Clause

¶ 26        Plaintiffs next contend the trial court erred in denying their motion for summary judgment on the issue of the enforceability of the *in terrorem* clause. Plaintiffs argue that the trial court violated public policy in upholding the validity of a rarely used clause. Furthermore, plaintiffs argue the clause is inapplicable because their claim has not been found to be without merit and they are not seeking to prevent the execution of the trust. In contrast, defendant contends the *in terrorem* clause is valid and applicable, and disinherits plaintiffs because they instituted the underlying lawsuit to contest the validity of article fourth, section 1, or to prevent its execution.

¶ 27        To be clear, the trial court denied defendant's summary judgment request to find the *in terrorem* clause valid and applicable; however, the court additionally denied plaintiffs' summary judgment request to find the clause unenforceable.

¶ 28        Article twenty-eighth of Irwin's trust provided, in relevant part:

          "Should any beneficiary of my will or trust contest the validity of my will or trust or institute any proceedings to contest the validity of my will or trust or any provision thereof or to institute any proceedings to construe any provision of my will and such proceedings are deemed to be without merit by any court or to prevent any provision of my will or trust from being carried out in accordance with its terms (whether or not in good faith and with probable cause), then all the benefits provided for such beneficiary in my will or trust are revoked *** and the benefits which such beneficiary and all his or her descendants would have received if he or she had made no such contest or brought such proceedings shall go under my residuary clause."

¶ 29        "Generally, conditions in a clause against contesting the will or attempting to set it aside are valid. [Citation.] Even where they are held valid, though, conditions against contests are so disfavored by the courts that they are construed very strictly. [Citation.] This view is guided by the well-established rule that equity does not favor forfeitures, and in construing

-8-

conditions, both precedent and subsequent, a reasonable construction must be given in favor of the beneficiary. [Citations.]" *In re Estate of Wojtalewicz*, 93 Ill. App. 3d 1061, 1063, 418 N.E.2d 418 (1981).

¶ 30    We find the *in terrorem* clause has no application in this case and find no reason to determine its validity. Construing the clause very strictly and in light of the well-established rule disfavoring forfeiture, we conclude that plaintiffs were within their rights to institute the underlying proceedings to construe article fourth, section 1, and the trial court did not deem such proceedings to be without merit.

¶ 31    In response to defendant's brief contention that other equitable legal doctrines, namely, equitable estoppel, election, and waiver, prevent plaintiffs from being eligible to receive the gift in article fourth, section 1, we conclude that defendant's argument is not persausive. Plaintiffs have not taken inconsistent positions contrary to the doctrines of equitable estoppel and election by accepting the $30,000 that defendant gave them "to keep things going" while simultaneously contesting the validity of the trust. *In re Estate of King*, 245 Ill. App. 3d 1088, 1098, 614 N.E.2d 1348 (1993). Plaintiffs have not contested the validity of the trust. Rather, plaintiffs instituted proceedings to collect the gift they believed they are entitled to pursuant to the terms of the trust. Moreover, the amount of time that lapsed between Irwin's death and when plaintiffs filed the underlying lawsuit does not constitute waiver, or *laches*, where they provided defendant with the time necessary to satisfy her duties as trustee and only when it became obvious that she had no intention of satisfying the gift provided for under article fourth, section 1, did they institute a proceeding.

¶ 32                                    III. Joint Tenancy

¶ 33    Plaintiffs finally contend that defendant does not have a claim to the assets in the trust account where Irwin was within his rights to transfer the joint tenancy account assets into a trust account, thereby divesting defendant of her rights to those assets. Defendant responds that this court does not have jurisdiction to review whether she was entitled to half of the assets of the joint tenancy account where the question was at issue in the parties' cross-motions for summary judgment, which were both denied in the trial court's January 26, 2010, order. We agree with defendant.

¶ 34    A motion for summary judgment typically is not reviewable on appeal because it is an interlocutory order. *Fifth Third Bank, N.A. v. Rosen*, 2011 IL App (1st) 093533, ¶ 21. However, an exception exists where the parties have filed cross-motions for summary judgment and one motion is granted while the other motion is denied. *Id.* (citing *In re Estate of Funk*, 221 Ill. 2d 30, 85, 849 N.E.2d 366 (2006)). That exception does not apply here where both cross-motions were denied on January 26, 2010, and plaintiffs are seeking review of the denial of summary judgment in conjunction with a review of the trial court's "final and appealable" September 28, 2010, order pursuant to Rule 304(a) on the separate claims of ademption and the *in terrorem* clause. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 358, 718 N.E.2d 191 (1999). We, therefore, lack jurisdiction to consider the trial court's January 26, 2010, order denying the parties' cross-motions for summary judgment.

¶ 35                    CONCLUSION

¶ 36    We conclude the trial court erred in granting summary judgment in favor of defendant on the issue of ademption. We remand this cause for a hearing on the appropriate gift under the terms of article fourth, section 1, of the trust. We further conclude that the trial court's order denying summary judgment to defendant on the issue of the *in terrorem* clause was proper, but the trial court should have granted summary judgment to plaintiffs to the extent that the *in terrorem* clause was inapplicable to the facts of this case.

¶ 37    Affirmed in part and reversed in part; cause remanded.