MICHELE NICHOLAS MUCCI, Current Income Beneficiary of the Michele Mucci and Bernice Mucci, Deceased, *Inter Vivos* Trusts and Estates, Petitioner-Appellee, v. JOHN DALE STOBBS, Trustee of the *Inter Vivos* Trusts of Michele Mucci and Bernice Mucci, Deceased, Respondent-Appellant.

Fifth District   No. 5—95—0457

Opinion filed June 5, 1996.

John Dale Stobbs and James S. Sinclair, of Alton, David G. Dempsey, of St. Louis, Missouri, and John D. Stobbs II, of East Alton, for appellant.

Elisabeth A. Ritter, of Wiseman, Shaikewitz, McGivern, Wahl, Flavin, Hesi & Mormino, P.C., of Alton, for appellee.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

John Dale Stobbs, as trustee of the *inter vivos* trusts of Dr. Michele Mucci and Mrs. Bernice Mucci, who are now deceased, appeals from the trial court's order removing him as trustee. On appeal, Stobbs argues that the trial court abused its discretion in ordering his removal as trustee. We affirm.

## I. FACTS

The appellant, John Dale Stobbs, is a licensed attorney and a partner in the law firm of Stobbs and Sinclair. In 1989, Stobbs drafted virtually identical wills and revocable *inter vivos* trusts for his long-time friends, Michele and Bernice Mucci. In February 1990, Stobbs

prepared a first amendment to each of the trusts. Under both the original trust and the amendment, Stobbs was appointed as the successor trustee at the deaths of both Dr. and Mrs. Mucci. Dr. Mucci died on September 7, 1990, and Mrs. Mucci died five days later. Their son, the petitioner herein, Michele Nicholas Mucci (Mucci), is currently the only beneficiary of the income and principal of the trusts.

On October 11, 1994, Mucci filed a petition to remove Stobbs as the trustee. In that petition, Mucci alleged that he had attempted to remove Stobbs as the trustee, pursuant to section six(A) of the trust, which provides:

> "At any time or times the persons described in paragraph E may remove any acting Trustee by written notice to such Trustee."

The persons described in paragraph E are Mucci, as the current income beneficiary, and "JOHN DALE STOBBS, or the senior partner in point of service with Stobbs and Sinclair Law Firm, Alton, Illinois, or its successors in interest." Mucci alleged that he served a written "Notice to Remove Trustee" on Stobbs and his law firm on May 31, 1994, and that Stobbs refused to comply with the removal. Mucci sought to replace Stobbs with the Mark Twain Illinois Bank (the Bank) of Belleville, Illinois.

Mucci further alleged that Stobbs refused to step down as trustee, and that Stobbs based his authority to remain as trustee indefinitely upon paragraphs six(B) and (D) of the trust, which provide:

> "B. If the Trustee resigns or ceases to act, the persons described in Paragraph E shall appoint as Trustee any person, bank or trust company, wherever situated. *I expressly give to my attorney, John Dale Stobbs, the power to remove any Trustee or Successor Trustee by the notice provided in Sub-section A above.* Each Successor Trustee shall have the powers and discretions herein granted to its predecessor.
>
> ***
>
> D. As often as the Trustee deems such action to be advantageous to any trust or any beneficiary it may, by written instrument, resign. The Substitute Trustee shall have all the powers and discretions of the Trustee. *The Trustee may remove the Substitute Trustee at any time and reappoint itself as Trustee."* (Emphasis added.)

Mucci requested the court to remove Stobbs as the trustee immediately, to order Stobbs to file an accounting with the court, to order Stobbs to turn over all assets of the trust to the Bank as successor trustee, and to construe the pertinent provisions of the trust so as not to restrict Mucci's right to appoint a successor trustee.

On November 16, 1994, Stobbs filed an answer, a motion to dismiss, and a counterclaim, which named Stobbs, "not individually,

but as Trustee," as the counterpetitioner and Mucci as the counterrespondent. Count III of the counterclaim is the only count with any direct bearing on this appeal. In count III, Stobbs alleged that Mucci's attempt to remove him as trustee "was a nullity." The pertinent provisions of Stobbs's counterclaim are as follows:

"10. On or about June 1, 1994, Counter-Defendant was notified that his attempt [to remove Stobbs as the trustee] was a nullity, since the Counter-Plaintiff was the named Successor Trustee, who had exercised the power granted to remove any Successor Trustee. Pursuant to the plain and express language of the instruments creating the subject Trusts, the grantors clearly empowered Counter-Plaintiff with the unrestricted authority to remove any Successor Trustee. ***

11. Any attempt by the current income beneficiary, Nick Mucci, to remove Counter-Plaintiff, and, thereafter, name a Successor Trustee is subject and inferior to the power of the Counter-Plaintiff, to remove same."

To his counterclaim, Stobbs attached a June 1, 1994, letter from Stobbs to Mucci. The letter related Stobbs's position regarding Mucci's attempted removal, the pertinent parts of which are as follows:

"Pursuant to clauses Sixth (B) and (E) of the *inter vivos* trusts of Michele Mucci and Bernice Mucci and the power therein vested in John Dale Stobbs by the grantors, and the absence of any such powers granted to M. Nicholas Mucci anywhere in the instruments of either grantor, you are herewith notified that your effort to appoint Mark Twain Bank as successor trustee[ ] has no legal effect and John Dale Stobbs is confirmed as trustee. The total intent of the instruments makes it clear that M. Nicholas Mucci is not to exercise any such control over the trustee or the trust corpus. Said provisions make it clear that John Dale Stobbs, denominated by name, is to have plenary powers in the matter of who shall serve as trustee. Mark Twain Bank is expressly not so nominated by John Dale Stobbs and is not to serve. Said decision is conversant [*sic*] with the intention of your parents, the grantors, that you not be given control over the trust funds except in the stages prescribed.

You are further notified that any future notices of removal of the undersigned are in and of themselves null and void.

You are further notified of the expectation of John Dale Stobbs or the senior partner in point of service with Stobbs and Sinclair[ ] to continue as trustee through the end of the period prescribed in the trust. Your continued disruption of the trust administration is counter-productive."

On December 8, 1994, Mucci filed responses to all of Stobbs's

pleadings, including a motion to dismiss Stobbs's counterclaim and a petition for sanctions and attorney fees. In the petition for sanctions, Mucci alleged that he had filed a legal malpractice action against Stobbs and his law firm, for their actions as trustee and attorney for the trust, that Stobbs's refusal to step down as trustee was improper, that Stobbs's request for attorney fees for filing his pleadings in the instant case was improper, that Stobbs's request for attorney fees and expert witness fees in the legal malpractice actions was "an affront to this Court's jurisdiction and is an attempt to make a mockery [of] our *** judicial system," and that Mucci was being damaged by all of Stobbs's pleadings in the case.

On February 14, 1995, Mucci filed an "Emergency Motion for Summary Judgment to Remove John Dale Stobbs as Trustee," to which he attached, *inter alia*, copies of the notice of removal sent to Stobbs, Stobbs's June 1, 1994, letter to Mucci, referred to above, wherein Stobbs refused to relinquish his trusteeship, and the law complaint filed against Stobbs "for damages to the trust res and malpractice." In the motion, Mucci requested the court to "act with all expediency to remove the Defendant as Trustee," to support his appointment of the Bank as Trustee, and to bar Stobbs and his law firm "from collecting from the assets of the trust corpus any fees related to the removal of John Dale Stobbs as Trustee or related to any acts after the date of notice of this termination as Trustee."

In Mucci's brief in support of his motion for summary judgment, he argued, in part, that Stobbs's refusal to allow Mucci to exercise his right to remove him as trustee and his refusal to accept Mucci's choice of successor trustee amounted to a breach of his fiduciary duty to Mucci under the trust.

On March 28, 1995, Stobbs filed a memorandum in response to Mucci's motion for summary judgment. Stobbs argued that the court could not enter summary judgment, since the parties' different interpretations of Mucci's power to remove Stobbs as trustee created a justiciable controversy and genuine issues of material fact. However, in the same memorandum, Stobbs argued that the trust was clear and unambiguous and, as a result, the "intent of the Testator must be derived from a review of the four corners of the document."

Stobbs also filed a response to Mucci's motion for summary judgment, to which he attached his affidavit. In the affidavit, Stobbs states:

"2. DR. MICHELE MUCCI AND I HAD A VERY SPECIAL RELATIONSHIP. WE WERE BOTH VERY GOOD FRIENDS, AS WERE OUR WIVES, AND I WAS HIS LAWYER FOR AT LEAST 20 YEARS BEFORE HIS DEATH. ***

3. IN 1989 DR. MUCCI, WHO HAD BEEN DIAGNOSED WITH LUNG CANCER *** WANTED TO UPDATE HIS ESTATE PLAN. ***

***

5. DR. MUCCI AND HIS WIFE WERE PRIMARILY CONCERNED ABOUT TAKING CARE OF EACH OTHER AND[,] UPON THE DEATH OF THE LAST TO DIE, OF THEIR ADOPTED SON, NICK.

6. DR. MUCCI DID NOT BELIEVE THAT NICK HAD THE CAPACITY OR BUSINESS JUDGMENT TO ADMINISTER THE ASSETS HE HAD ACCUMULATED DURING HIS LIFE-TIME. BECAUSE OF OUR SPECIAL RELATIONSHIP HE KNEW THAT I HAD THE CAPACITY TO ADMINISTER, PRESERVE, MANAGE AND DISTRIBUTE HIS PROPERTY, IF HIS WIFE SHOULD PREDECEASE HIM, OR UPON HER DEATH, SO THAT NICK WOULD RECEIVE IT ULTIMATELY.

***

8. I WAS DESIGNATED AS THE SUBSTITUTE TRUSTEE. DR. MUCCI WANTED ME TO ACT BECAUSE OF OUR PRIOR RELATIONSHIP AND BECAUSE HE DID NOT WANT A TRUST COMPANY OR BANK TO ACT. HE HAD A PRIOR BAD EXPERIENCE WITH A BANK AS A TRUSTEE AND DID NOT WANT A REPEAT.

9. DR. MUCCI WANTED A TRANQUIL ADMINISTRATION. HE BELIEVED THAT NICK WAS ERRATIC AND WOULD DESTABILIZE ANYTHING HE TOUCHED. THEREFORE, HE GAVE ME THE POWER TO REMOVE ANY SUBSTITUTE TRUSTEE THAT MIGHT BE APPOINTED BY EITHER MYSELF OR BY NICK MUCCI. IF I WERE ALREADY ACTING AS THE SUCCESSOR TRUSTEE, THEN ANY ATTEMPT TO REMOVE ME WITHOUT CAUSE COULD BE NULLIFIED BY ME BY SIMPLY REFUSING TO PERMIT HIM TO REMOVE AND APPOINT[;] IT WAS SUBJECT TO MY PLENARY POWER TO REMOVE HIS APPOINTEE AND TO REMAIN AS SUCCESSOR TRUSTEE.

* * *

12. IT IS FOR THESE REASONS THAT THE TRUSTS PROVIDE THAT I AM THE SUCCESSOR TRUSTEE, WITH POWER TO REMOVE ANY SUCCESSOR TRUSTEE ATTEMPTED TO BE APPOINTED AND THE CONCURRENT POWER TO DESIGNATE ANY PERSON, INCLUDING MYSELF, BANK OR TRUST COMPANY AS SUCCESSOR. THE POWER OF THE CURRENT INCOME BENEFICIARY, NICK, TO REMOVE AND TO APPOINT, IS AND WAS ALWAYS INTENDED TO BE SUBJECT TO THESE POWERS CONFERRED UPON ME."

On May 10, 1995, Mucci filed an "Amended Emergency Motion for Summary Judgment to Remove John Dale Stobbs as Trustee." The amended motion for summary judgment basically relies upon the theories presented in the original motion for summary judgment, but it adds additional allegations to support those theories. Of interest to this appeal are Mucci's allegations that all of the language of the trusts must be construed to give it full effect, including the language giving Mucci the power to remove and reappoint the trustee. Mucci argues, "[Stobbs] drafted this language; he should not now be able to declare it a nullity or avoid its terms." Mucci argues that Stobbs should not be able to exercise any power granted to him under the trusts "in an arbitrary fashion or in any fashion which will hurt the Trust," and that Stobbs had not offered any reason why Mucci's choice of trustee, the Bank, would not be able to serve effectively and according to the intentions of the settlors.

On June 5, 1995, the court held a hearing on all pending matters. Mucci's attorney argued that, to the extent that Stobbs had the right to remove Mucci's choice of trustee, the court should disallow his choice of himself as trustee as an abuse of Stobbs's discretion. Mucci's attorney argued that Stobbs's actions proved that he was not acting in good faith, since good faith as a trustee requires undivided loyalty to the trust and its beneficiary.

Stobbs argued in rebuttal that the trusts were not ambiguous, and that the court must give effect to the plain language that gives Stobbs the power to remove any trustee and reappoint himself as trustee. In the alternative, Stobbs argued that if the court found the trusts to be ambiguous, then the court should allow the parties to submit evidence of the settlors' intentions. Stobbs admitted that his affidavit would not be admissible if the court found the trusts unambiguous.

The trial court ruled that the trusts are "not ambiguous in the least," and that the case was, "without any question," properly the subject of a motion for summary judgment. The court found that Mucci was clearly given the right to terminate a trustee, but that Stobbs also had a right to veto Mucci's termination of the trustee. The court declared the provisions giving Stobbs the ultimate veto power "null and void" for two reasons. First, the court found that "the public policy of this state does not allow a trustee to continue to re-appoint himself where some serious questions exist regarding the actions of the trustee relative to the benefit of the trust." Second, the court found that the settlors clearly did not intend Stobbs to remove Mucci's choice of trustee regardless of Stobbs's actions. Stobbs appeals from the order removing him as trustee and appointing the Bank to succeed him as trustee.

## II. ANALYSIS

Stobbs first argues that the trial court failed to consider the entire trust but, instead, singled out and nullified the provisions giving Stobbs the power to remove Mucci's choice of trustee and reappoint himself as trustee. Stobbs argues that the court's finding that these provisions are against the public policy of this State is erroneous, because such a public policy is not clearly enunciated in any constitution, statute, or judicial decision. Stobbs contends that the court was authorized to do only one of two things: first, interpret the trusts as unambiguous, allow Stobbs to do exactly as he did, and dismiss petitioner's petition to remove him as trustee, or second, construe the trusts as ambiguous and allow the parties to present evidence as to the settlors' intentions. We do not agree with any of Stobbs's arguments.

■ Initially, we note that there is nothing in the record to indicate that the trial court failed to consider all of the provisions of the trust or that the court singled out any particular provision. In the case at bar, Mucci's pleadings required the court to interpret the trusts. When a court construes a trust instrument, its first purpose is to discover the settlor's intent from the trust as a whole and to give effect to that intent if not contrary to public policy. *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991). When construing a trust, the court should apply the same rules that apply to the construction of wills (*Harris Trust & Savings Bank*, 145 Ill. 2d at 172) and contracts (*In re Support of Halas*, 104 Ill. 2d 83, 92 (1984)). All of the provisions of the trust must be considered, and the court should give the words used their plain and ordinary meaning. None of the provisions should be rendered meaningless or in conflict with any other provision, and all of the provisions should be harmonized with each other if at all possible. *Harris Trust & Savings Bank*, 145 Ill. 2d at 172-73; *Halas*, 104 Ill. 2d at 92.

■ In the case at bar, there is nothing in the record to support Stobbs's argument that the trial court singled out certain provisions of the trust and failed to consider others. Of course, the conflict between Mucci and Stobbs centered around the provisions concerning their respective rights to remove and appoint trustees. Nevertheless, the record is clear that the trial court applied the correct principles of law and that its decision did not violate any of those principles. Moreover, the court was correct in determining that it could properly grant Mucci's motion for summary judgment. Since the trusts are not ambiguous, their interpretation is a question of law for the court to decide. *Stein v. Scott*, 252 Ill. App. 3d 611 (1993).

Stobbs most vehemently argues that the following findings of the trial court, as set forth in its June 6, 1995, order, are improper:

"4. That this Court has in equity the power to supervise the trust and in essence to right any *potential* wrongs to insure that the trust is administered properly.

5. That those provisions of the trust instrument which allow John Dale Stobbs the ultimate veto power over a successor trustee are null and void.

6. That the public policy of this state does not allow a trustee to continue to re-appoint himself *where serious questions exist* regarding the actions of the trustee relative to the benefit of the trust.

7. That the Court finds that the grantor did not intend that the Plaintiff could not remove John Dale Stobbs as a trustee in this case regardless of the conduct of John Dale Stobbs as trustee." (Emphasis added.)

Stobbs argues that the trial court could not, upon a motion for summary judgment, remove him as trustee based upon "potential wrongs" or "serious questions" as to his conduct as trustee, and that he was entitled to a hearing in which he could present evidence to counter Mucci's allegations. Additionally, Stobbs argues that the court improperly revised the trust by voiding the plain meaning of the provisions granting him the right to remove Mucci's choice of trustee. While the trial court's order lends itself to Stobbs's argument, we do not find the order improper. Hence, we affirm, although on slightly different grounds than those articulated by the trial court.

The trial court was correct in finding that the trust instruments are unambiguous and clear on their face. However, Stobbs does not have ultimate veto power over Mucci's choice of trustee. On the contrary, the provisions relating to the removal of the trustee confer equal power on both Mucci, as the current income beneficiary, and Stobbs, as trustee and as attorney for the estate and for the settlors during their lifetimes. Stobbs has claimed a supreme and preeminent power to veto any choice of trustee exercised by Mucci, but the language of the trusts does not support that claim. The provisions referring to the removal of the trustee do not include any language to indicate that Stobbs's power to remove a trustee is superior to Mucci's identical power as the income beneficiary. Although Stobbs's right to remove the trustee is found in three separate provisions of the trusts that he drafted, none of these provisions have any language to indicate that Stobbs's right in this regard should prevail when there is a conflict between Stobbs and Mucci. Without any language to establish a "plenary" power of removal in Stobbs, the court was correct in finding that Mucci's choice of trustee should be accepted. Indeed, if the court were to accept Stobbs's interpretation of the trusts, it would be guilty of the revision Stobbs asserts against it now.

The trust is clear; the only requirement for Mucci to remove the trustee is to give the trustee written notice. Mucci sent Stobbs written notice of removal on May 31, 1994. Stobbs does not argue that Mucci's notice of removal does not comply with the terms of the trusts, but only that Mucci cannot remove him without cause, since Stobbs will immediately and continually remove Mucci's choice of trustee and reappoint himself. The terms of the trusts do not require Mucci to state a reason for the removal. Therefore, the written notice Mucci sent to Stobbs on May 31, 1994, complied with the terms of the trust, and Stobbs was obliged to accept Mucci's appointment of a new trustee.

The trial court was additionally within its discretion in removing Stobbs as trustee, based upon his breach of fiduciary duty, even though the court did not specify that particular ground for his removal. As trustee, Stobbs owed a duty of undivided loyalty to the trust and its beneficiary. *In re Estate of Hawley*, 183 Ill. App. 3d 107 (1989); Restatement (Second) of Trusts § 170, at 364 (1959). "The inherent power of a court of equity over trusts includes the power to remove a trustee for breach of trust, misconduct or disregard of fiduciary duties." *Altschuler v. Chicago City Bank & Trust Co.*, 380 Ill. 137, 142 (1942).

The pleadings indicate that Stobbs was less than completely loyal to these trusts and their beneficiary. Some of the examples of Stobbs's disregard for Mucci's interest and welfare are found in his counterclaim and in his letter to Mucci wherein he refused to accept his removal. Stobbs alleged in his counterclaim that he was "empowered" with the "unrestricted authority to remove any Successor Trustee." No trustee has unrestricted authority. The requirements of loyalty and fair dealing and good faith are at the core of every trust instrument, whether specifically stated or not. Restatement (Second) of Trusts § 164, Comment *h*, at 343-44 (1959). Stobbs asserted in his letter to Mucci that Mucci has no power "anywhere in the instruments of either grantor" to remove Stobbs as the trustee, that "any future notices of removal" are "in and of themselves null and void," and that he expects "to continue as trustee through the end of the period prescribed in the trust." These statements show that Stobbs has, at a minimum, refused to recognize that the trusts he drafted and the settlors signed grant Mucci the right to remove Stobbs as trustee "at any time or times" on the sole condition that Mucci send "written notice to such Trustee."

Furthermore, each trust must be construed upon its own unique terms, and whether a trustee should be removed depends upon the circumstances of each particular case. *Chicago Title & Trust Co. v.*

*Chief Wash Co.*, 368 Ill. 146, 156 (1938). Under the terms of these trusts, Stobbs as trustee and Mucci as beneficiary are granted equal powers to remove the trustee. Clearly, under the circumstances of this case, the exercise of the right of removal by the beneficiary must prevail over the conflicting exercise of the same power by the trustee, since the overriding purpose of every trust is for the welfare of the beneficiary. See Restatement (Second) of Trusts § 170(1), at 364 (1959).

"It is a well-settled rule of law in this State that a trustee may not *** place himself in a position where his interests conflict with those of the trust beneficiaries." *Hawley*, 183 Ill. App. 3d at 109. Under these circumstances, it was Stobbs's duty "to ascertain whether the attempted exercise of the power" to remove Stobbs as trustee was or was not within the terms of the trust and to act accordingly. Restatement (Second) of Trusts § 185, Comment *d*, at 396-97 (1959).

Thus, as trustee, Stobbs had standing to challenge Mucci's choice of beneficiary as contrary to the purposes and provisions of the trusts. However, Stobbs has not argued that Mucci's choice of the Bank is improper for any reason other than that Stobbs must remain trustee. Stobbs's argument contradicts the plain terms of the trust, and the court was correct in accepting Mucci's choice of successor trustee. We hold that the trial court did not abuse its discretion in allowing the income beneficiary to exercise his right to remove Stobbs as the trustee, without giving a reason for the removal, upon Mucci's written notice of the same to Stobbs.

Stobbs makes an alternative argument against the Bank as trustee, which he stated in his affidavit, that Dr. Mucci, the settlor, had a "prior bad experience with a bank as trustee" and as a result "did not want a trust company or bank to act" as trustee. While Stobbs admitted that the affidavit is inadmissible if the trust is found to be unambiguous, which it is, we find it incredible that Stobbs, who drafted these trust instruments, would allege under oath that the settlor did not want a bank or trust company as a successor trustee, when the trusts specifically and clearly allow Mucci or Stobbs to appoint "any person, bank or trust company, wherever situated" as successor trustee.

There is an additional ground upon which we affirm the trial court's removal of Stobbs as trustee. After Mucci filed the complaint against Stobbs and his law firm for legal malpractice in regards to their actions as trustee and attorney for the trust, Stobbs was under a conflict of interests that, as a matter of law, required his removal as trustee. A conflict of interests can continue only if specifically sanctioned by the trust instrument. *Hawley*, 183 Ill. App. 3d at 109.

In the trust involved in this case, there is no provision allowing this particular conflict of interests to continue. We do not pass on the sufficiency of the allegations in the malpractice complaint to state a cause of action, nor do we make any findings about whether Mucci or Stobbs will prevail in that lawsuit. We do find, however, that Stobbs could not defend the malpractice action and still give his undivided loyalty to the trust and its beneficiary. Hence, the court's order removing Stobbs as trustee is also proper under this additional ground.

We finally note that Stobbs has acted under a conflict of interests since the date he drafted these trusts. Stobbs was the attorney for the settlors and developed an estate plan in which he or his law firm were named as the successor trustee at the deaths of both of the settlors. Under the same trusts drafted by Stobbs, he is given the authority in three separate places to remove the trustee. Stobbs's law firm has represented the beneficiary in certain matters unrelated to the trusts during the time Stobbs was trustee, and now, Stobbs is an appellant in the removal suit as well as a respondent in the action in which the beneficiary charges him with mishandling the trust. All of these roles require undivided loyalty; yet, all of the loyalties are in conflict with each other. Therefore, the trial court's removal of Stobbs as trustee additionally and properly serves to alleviate the conflict of interests.

Accordingly, for all of the reasons stated, we affirm.

Affirmed.

GOLDENHERSH and KUEHN, JJ., concur.