# Illinois Official Reports

## Appellate Court

***Spencer v. Di Cola*, 2014 IL App (1st) 121585**

| | |
|---|---|
| Appellate Court Caption | LYLE SPENCER, JR., as Beneficiary of the Lyle M. Spencer Trust, Plaintiff-Appellant, v. JOAN DI COLA, as Successor Trustee of the Lyle M. Spencer Trust, Defendant-Appellee (Loren Spencer, a Minor, Lyle Spencer III, a Minor, and Melissa Spencer, a Minor, as Beneficiaries of the Lyle M. Spencer Trust, Plaintiffs; Emily Spencer and Julia Spencer, as Beneficiaries of the Lyle M. Spencer Trust, and the Spencer Foundation, an Illinois Not-For-Profit Corporation, Defendants).–LYLE SPENCER, JR., as Beneficiary of the Lyle M. Spencer Trust, Plaintiff-Appellant, v. JOAN DI COLA, as Successor Trustee of the Lyle M. Spencer Trust, Defendant-Appellee (Loren Spencer, a Minor, Lyle Spencer III, a Minor, and Melissa Spencer, a Minor, as Beneficiaries of the Lyle M. Spencer Trust, Plaintiffs; Emily Spencer and Julia Spencer, as Beneficiaries of the Lyle M. Spencer Trust, and the Spencer Foundation, an Illinois Not-For-Profit Corporation, Defendants). |
| District & No. | First District, Fourth Division<br>Docket Nos. 1-12-1585, 1-12-2196 cons. |
| Filed | May 1, 2014 |
| Rehearing denied | August 18, 2014 |
| Modified upon denial of rehearing | August 21, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly entered summary judgment for the individual trustee of a family trust in a beneficiary's action seeking the appointment of a different trustee, since the trust's terms did not grant such authority to the beneficiaries and the agreements entered into by the beneficiaries were ineffective to achieve that goal; furthermore, the individual trustee was properly awarded attorney fees for defending the challenge on behalf of the interests of the beneficiaries as a whole. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-41964; the Hon. LeRoy K. Martin, Jr., Judge, presiding. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | Kerry R. Peck, Timothy J. Ritchey, and Jesse A. Footlik, all of Peck, Bloom, LLC, of Chicago, for appellant. |
| | Nancy G. Lischer and Peter D. Sullivan, both of Hinshaw & Culbertson LLP, of Chicago, for appellee. |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion. Justices Fitzgerald Smith and Epstein concurred in the judgment and opinion. |

## OPINION

¶ 1     In the matter before us, we confront an appeal by beneficiaries of a trust, who claim that they ought to be able to appoint a corporate trustee to effectively replace an individual trustee, without any proof of cause for removal, in a manner that they suggest is consistent with the trust's terms. The original trust documents provided for both an individual trustee and a corporate trustee. Many years before the action triggering this appeal was filed, however, the original corporate trustee filed suit asking to be removed because of a perceived conflict between the corporate trustee, the appointed individual trustee and several beneficiaries (No. 82 CH 436). In the 1982 order that granted this request, the trial court specifically found that the relevant will creating the trust did not "require the appointment of a successor corporate trustee." Two years later, pursuant to petition, the trial court reformed a trust provision to grant the adult beneficiaries the power to appoint successor trustees (No. 84 CH 2159). More than two decades later, disputes arose concerning the amount of distributions by the individual successor trustee, which led the beneficiaries to file the present action (No. 09 CH 41964). The beneficiaries, led by plaintiff Lyle Spencer, Jr., initially wanted to remove the trustee but ultimately changed course, asserting that they were merely attempting to appoint a corporate trustee, notwithstanding the 1982 action. The beneficiaries also executed documents attempting to appoint a "successor" or "substitute" corporate trustee. After cross-motions for summary judgment were filed, the trial court denied the beneficiaries relief. This appeal followed.

## I. BACKGROUND

We recite only those facts necessary to resolve the issues raised on appeal. Lyle M. Spencer, Sr. (the Settlor), died in 1968, leaving an estate in excess of $75 million. The portion of his estate relevant to this appeal consisted of a family trust, which left $3 million to his four male children, Lyle Spencer, Jr. (Lyle), Steven Spencer, Richard Spencer and David Spencer, as well as their descendants. The trust was primarily oriented toward education and housing, with the possibility of assisting in the start up of businesses. In addition, the trust language empowered these individual and corporate trustees with great discretion, including the ability to make unequal distributions to the beneficiaries. As originally drafted, the trust appointed Harlowe E. Bowes as the individual trustee and Harris Trust and Savings Bank or its corporate successor (Harris) as the corporate trustee. Article VIII(a) of the trust provided, in pertinent part, as follows:

> "If at any time no individual hereunder is acting as Trustee, then such individual as shall be designated by a majority of the partners of Sidley & Austin or of any successor to the law practice of said firm, shall act as successor individual Trustee."

Thus, the original trust contemplated that an individual successor would be appointed if no individual was acting as trustee. We note that the trust did not specifically provide for the appointment of a corporate successor trustee in the event that no corporation was acting as trustee.

Moreover, article VIII(e) stated as follows:

> "The Trustees shall have power to appoint any bank or trust company wherever located as substitute Trustee of any trust, if and as often as the Trustees deem it advantageous; to give the substitute Trustee such titles, powers and discretions as the Trustees deem advisable; to remove a substitute Trustee; to accept the resignation of a substitute Trustee; and to give a full release and discharge to a substitute Trustee, conclusive and binding on all beneficiaries hereunder, by approving its accounts. A substitute Trustee, upon its resignation or removal, shall transfer all trust property in its possession as the Trustees direct. The Trustees' power to appoint and remove substitute Trustees may be exercised in their discretion and shall be exercised if directed in writing by a majority in interest of the beneficiaries of the trust."

Thus, this provision grants a sitting trustee several distinct powers, one of which must be exercised at the appropriate direction of the beneficiaries. We further note that while article VIII(e) provided that a substitute trustee could be removed, no provision in article VIII expressly provided that the sitting trustee could be removed by the beneficiaries. *Cf. Mucci v. Stobbs*, 281 Ill. App. 3d 22, 24, 31 (1996) (the trust expressly provided the beneficiary the right to "remove" any sitting trustee); see also George G. Bogert *et al*., The Law of Trusts and Trustees § 520, at 27 (3d ed. 2000) ("If no provision for removal is made in the trust instrument or in the statutes of the state, neither the settlor, the beneficiary, nor a co-trustee has the power of removal.").

More than a decade later in 1982, after approximately $1.2 million had been distributed from the original trust, Harris filed suit asking to resign as the corporate trustee because of disputes between Harris on one side and Murray and the Settlor's children on the other (No. 82 CH 436). Harris wanted to deny distribution requests that Murray wanted to grant. Murray also requested the court to order that he be the sole trustee, which drew no objection from Lyle or the other beneficiaries. Murray argued that the trust documents envisioned the

possibility that there would not be any need for a corporate trustee and, more specifically, that there was no "requirement that there always be a corporate trustee." The trial court agreed and ordered that Murray be the sole trustee of the family trust.

¶ 6 Two years later, Murray asked the trial court to split the family trust into three individual trusts to reflect the differing interests of the Settlor's three remaining sons, including Lyle, and their descendants (No. 84 CH 2159). All three adult beneficiaries and Murray himself were in agreement on the various changes. Notable to this appeal, Murray also asked to modify article VIII(a) because Sidley & Austin, which had originally been charged with naming successor individual trustees, did not wish to remain in that role. Murray, after consulting with each of the three adult beneficiaries, suggested a modification that would allow the appointment of successor trustees in any of the individual trusts if a "majority in number of the adult income beneficiaries" so desired. The resulting trial court order specifically held that, "[t]he court reforms the terms of clause (a) of Article VIII *** to provide for the appointment of one or more successor trustees of any of the three trusts *** by a majority in the number of the adult income beneficiaries of such trust." The court's order did not, however, recite the modified provision verbatim.

¶ 7 Over the course of time, individual trustees resigned and individual trustees were appointed. The last trustee appointed for the trust at issue in this appeal was defendant Di Cola, a trusts and estates attorney from Boston, Massachusetts. This 1999 appointment came at the behest of Lyle, who exercised his right under article VIII(a) to designate a successor individual trustee. Lyle has five children who are beneficiaries of the trust. Some years later, Lyle's current wife (notably, a nonbeneficiary) requested funds from Di Cola for day care and "pre-kindergarten tuition," which Di Cola denied on the trust's language and the fact that several beneficiaries were covered by the trust, which required the trustee to be careful about how funds were distributed over time. Other conflicts developed over claims that the beneficiaries were inadequately informed of the performance of investments. These several disagreements apparently prompted Lyle to file this suit against Di Cola.[1]

¶ 8                                    II. THE 2009 ACTION
¶ 9 In Lyle's multicount complaint, he averred that Di Cola should be removed for several reasons, including for cause. He complained of not receiving requested disbursements, while admitting that the trust gave the trustee broad discretion in making disbursements from the trust. He also complained that the trust had not performed well due to a lack of diversification, even though the trust granted the trustee virtually unfettered power to hire independent investment advisors along with the power to invest and reinvest in stocks and other investments. The timing of these alleged performance failures also happened to coincide with the precipitous 2008-09 stock market slump and the ensuing global recession, factors which Di Cola subsequently asked the court to take judicial notice of. The trial court dismissed the counts attempting to remove Di Cola for cause.

¶ 10 Lyle also sought removal of Di Cola pursuant to the terms of the trust. Without reciting each and every allegation in the several complaints that were filed, the overarching demand

_____

[1]Lyle initially filed the complaint on his own behalf along with his minor children. For the sake of simplicity, we will refer to this family/beneficiary group as Lyle, in deference to his representative capacity.

of Lyle was the immediate removal of Di Cola as the trustee, in whose place a corporate trustee, Attorney's Title Guaranty Trust (ATG), would be named a "successor" trustee under article VIII(a) or a "substitute" trustee under article VIII(e). Lyle, along with his adult daughters, Julia and Emily, had executed agreements to that effect.

¶ 11                                    III. SUMMARY JUDGMENT

¶ 12    The parties then filed cross-motions for summary judgment. Lyle argued he was entitled to summary judgment because the trust beneficiaries, through the aforementioned agreements, appointed ATG as a "substitute" and "successor" trustee. In addition, Lyle argued that the Settlor deliberately provided the beneficiaries with a method for the removal of the trustee. Di Cola asserted, however, that she was entitled to summary judgment because the substitute trustee provision did not authorize the removal of a sitting trustee, as opposed to the appointment and removal of a fill-in trustee. She also argued that the reformed successor trustee provision changed only the mechanism for appointing a successor trustee, leaving intact the requirement that a vacancy first occur. Since Di Cola had been the sole trustee for a number of years, she simply suggested to the court that there was no available vacancy.

¶ 13    Lyle abruptly changed course when responding to the motion for summary judgment filed by Di Cola. He then stated that he was *not* attempting to remove Di Cola as trustee, while reluctantly acknowledging that he was requesting that ATG essentially take over any and all duties previously assumed by Di Cola. He added that the appointment of ATG would be appropriate because of the vacancy caused by the 1982 resignation of Harris. Thus, Lyle gave all appearances of attempting to accomplish obliquely what he had been unable to achieve directly, based on the court's earlier rulings that struck the counts geared toward removing Di Cola for cause. This about-face left the court to decide only which party was entitled to summary judgment on counts I and II of plaintiff's second-amended complaint.

¶ 14    At a hearing on the cross-motions, the parties each argued that the unambiguous language of article VIII(a) and (e) controlled the judge's decision on which party was entitled to summary judgment. Lyle argued there was no limitation on the authority that can be given to a substitute trustee and that ATG's appointment would be "a complete substitution." In contrast, Di Cola argued a substitute was a temporary appointment for a discrete act. As to whether ATG could be a successor trustee, Lyle argued that a vacancy was created when Harris resigned, whereas Di Cola argued the court's prior order eliminated any vacancy. Di Cola further argued that Lyle was bound by the trial court's prior determination in 1982 that a corporate trustee was unnecessary.

¶ 15    After hearing extensive arguments, our learned colleague in the trial court granted summary judgment to Di Cola and denied Lyle's motion for summary judgment. The court agreed with Di Cola's analysis of the scope, function and power of a "substitute" trustee based upon the language of the section itself, along with the normal usage of the term. In essence, the court found that Lyle's interpretation of this relatively straightforward language would effectively neuter the broad discretion afforded to the individual trustee who had been properly appointed back in 1999. Article VIII(e) did not give the beneficiaries the right to tell the trustee who to appoint but, rather, gave them the right to tell the trustee to exercise her discretion to appoint or remove a substitute trustee. In addition, the court rejected the suggestion that beneficiaries could appoint successors at whim; rather, article VIII(a) was

merely a mechanism to appoint a new trustee where a vacancy existed. Moreover, the court found that it had previously eliminated the corporate trustee position and thus, there was no vacancy. Following the entry of summary judgment, the court awarded fees to Di Cola, over Lyle's objection, for her defense of the claims brought against her. Lyle appealed.

¶ 16       We entered our original opinion on May 1, 2014, but Di Cola's attorneys subsequently filed a petition for rehearing, arguing that this court overlooked Di Cola's request for attorney fees in defense of this appeal. In addition, the petition for rehearing noted that Di Cola died shortly before our original decision was entered. Following further briefing from the parties, this court denied the petition but now modifies the previously entered opinion. With that said, Lyle attempts to raise additional challenges to our prior decision based on Di Cola's death. Lyle did not, however, file his own petition for rehearing or a motion for an extension of time in which to file such petition. See Ill. S. Ct. R. 367(a) (eff. Dec. 29, 2009). Accordingly, we will not consider his contentions.

¶ 17                                    IV. ANALYSIS

¶ 18       On appeal, Lyle asserts the trial court erred in granting Di Cola summary judgment. Specifically, he contends that article VIII(e) of the trust permitted the appointment of a substitute corporate trustee, or alternatively, article VIII(a) permitted the appointment of a successor. We begin by considering the former contention.

¶ 19       Summary judgment is warranted where affidavits, pleadings, depositions, admissions and exhibits, when viewed in the light most favorable to the nonmovant, show that no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law. *Ruby v. Ruby*, 2012 IL App (1st) 103210, ¶ 13. In addition, where cross-motions for summary judgment are filed, the parties concede that no genuine issue of material fact exists and invite the court to determine the issues presented as a matter of law. *Alshwaiyat v. American Service Insurance Co.*, 2013 IL App (1st) 123222, ¶ 19. Thus, we review the trial court's ruling on the parties' motions for summary judgment *de novo*. *Ruby*, 2012 IL App (1st) 103210, ¶ 13. We also review the construction of a trust *de novo*. *Dunn v. Patterson*, 395 Ill. App. 3d 914, 919 (2009).

¶ 20       The same rules apply to the construction of wills and trusts. *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991). The goal is to determine the settlor's intent, which the court will effectuate unless contrary to law or public policy. *Fifth Third Bank, N.A. v. Rosen*, 2011 IL App (1st) 093533, ¶ 23. In addition, the intent to be determined is not that presumed to have been in the testator's mind but, rather, the intent expressed by the instrument's language. *In re Estate of Laas*, 134 Ill. App. 3d 504, 509 (1985). Thus, courts consider the plain meaning of the instrument's words in the context of the entire document (*Ruby*, 2012 IL App (1st) 103210, ¶ 19), rather than in isolation (*Fifth Third Bank, N.A.*, 2011 IL App (1st) 093533, ¶ 23). If possible, the court should construe a trust so that no language is treated as surplusage or rendered insignificant. *Ruby*, 2012 IL App (1st) 103210, ¶ 19. Furthermore, courts should avoid constructions which would render language nonsensical. *Stein v. Scott*, 252 Ill. App. 3d 611, 615-16 (1993).

¶ 21                                  A. Substitute Trustee
¶ 22       Here, article VIII(e) stated as follows:

"The Trustees shall have power to appoint any bank or trust company wherever located as substitute Trustee of any trust, if and as often as the Trustees deem it advantageous; to give the substitute Trustee such titles, powers and discretions as the Trustees deem advisable; to remove a substitute Trustee; to accept the resignation of a substitute Trustee; and to give a full release and discharge to a substitute Trustee, conclusive and binding on all beneficiaries hereunder, by approving its accounts. A substitute Trustee, upon its resignation or removal, shall transfer all trust property in its possession as the Trustees direct. The Trustees' power to appoint and remove substitute Trustees may be exercised in their discretion and shall be exercised if directed in writing by a majority in interest of the beneficiaries of the trust."

We agree that article VIII(a) is unambiguous. *Espevik v. Kaye*, 277 Ill. App. 3d 689, 694 (1996) (A trust provision is not ambiguous solely because the parties do not agree on its meaning.). That provision is subject to only one reasonable interpretation. *Cf. Fifth Third Bank, N.A.*, 2011 IL App (1st) 093533, ¶ 24 (Ambiguity exists where the instrument's language is reasonably susceptible to multiple interpretations.). The provision is not, however, reasonably subject to the interpretation forwarded by Lyle, as he disregards what it means to be a substitute trustee pursuant to this trust and that the power to appoint and remove is one of several distinct powers granted by article VIII(e).

¶ 23 The trust gave the sitting trustee the power to appoint a trust company, if and as often as the trustee deemed it advantageous. This eloquently demonstrates that the Settlor intended a substitute trustee to be appointed for a particular purpose. The trust also gave the sitting trustee the power to give the substitute trustee whatever titles, powers and discretions that the sitting trustee, not the beneficiaries, deemed advisable. In addition, the trust gave the trustee the power to accept the substitute trustee's resignation, to remove a substitute trustee, and to release and discharge the trustee. Thus, the plain language of these provisions demonstrate that the Settlor intended a sitting trustee to continue to exercise whatever powers were not specifically allocated to the substitute trustee and to remove a substitute trustee at the sitting trustee's pleasure. Accordingly, reading this provision in its entirety demonstrates that a substitute trustee is one appointed for a specific purpose and a limited duration.

¶ 24 While the majority of beneficiaries have the right to require the sitting trustee to exercise her "power to appoint and remove substitute Trustees," the plain language does not grant them the right to name the substitute who will be appointed. In addition, no language in this provision permits the beneficiaries to require a sitting trustee to exercise her power to give the substitute trustee specific titles, powers and discretions. Lyle's assertion that the beneficiaries have the power to direct "who, what, where, when and how" a substitute is to be appointed would require us to graft new language onto this provision. Simply put, the trust does not grant Lyle the right to micromanage the sitting trustee or to appoint someone who will. *Cf. Mucci,* 281 Ill. App. 3d at 24 (observing the trust provided that " '[t]he Substitute Trustee shall have all the powers and discretions of the Trustee,' " but that the latter could remove the former at any time).

¶ 25 We also reject Lyle's suggestion that "[f]or the Substitute Trustee Clause to have any real, consequential import to the beneficiaries, the beneficiaries must be able to appoint a substitute trustee for the scope that they deem fit." Our construction permits beneficiaries to protect their interests where a sitting trustee is *unable* to act to protect the beneficiaries' interests under particular circumstances, including illness or conflict of interest, but has failed

to appoint someone who can. In addition, our construction does not foreclose beneficiaries from requiring the appointment of a substitute trustee for a particular purpose but, rather, it forecloses the beneficiaries from usurping the sitting trustee's role in determining what tools the substitute will need to perform its function and who is best suited to accomplish that task. Furthermore, a trustee is always bound by its obligation to carry out a trust's terms with fidelity and good faith. *Farris v. Department of Employment Security*, 2014 IL App (4th) 130391, ¶ 30; see also *Mucci*, 281 Ill. App. 3d at 31 (observing that no trustee has unrestricted authority). Thus, we do not share Lyle's concerns that abuses will ensue. Moreover, this is consistent with the Settlor's overall intent to give the sitting trustee immense discretion. Accordingly, the beneficiaries cannot force a sitting trustee to effectively replace herself by transferring all powers to a substitute.

¶ 26    Here, Lyle contends that he gave Di Cola notice of the "Agreement to Direct the Trustee Joan Di Cola of the Lyle M. Spencer Jr. Trust to Appoint a Substitute Trustee." The agreement between Lyle and his adult children directed Di Cola to appoint ATG as substitute trustee and "to have all titles, powers and discretions as allowed per the terms of the Will *** [and] the 1984 Agreed order." Thus, regardless of how the beneficiaries characterized their agreement, they did not direct Di Cola to appoint a substitute trustee for a specific purpose and for a limited duration; rather, they directed her to completely replace herself with a substitute of their choosing. See George W. Howard III, *Removal*, in Estate Planning for Illinois Attorneys: The Basics and Beyond § 8.43 (Ill. Inst. for Cont. Legal Educ. 2012) ("[A]n unlimited right of removal can have the income beneficiaries shopping for a trustee who will favor them."); *cf. Mucci*, 281 Ill. App. 3d at 31 (the trust expressly provided the beneficiary the right to "remove" any sitting trustee without stating a reason). While Lyle complains that Di Cola did not appoint a substitute trustee to act in any capacity, the only capacity for which Lyle requested a substitute trustee to be appointed was inappropriate. Accordingly, Lyle attempted to exceed the powers granted him by article VIII(e).

¶ 27                                            B. Successor Trustee

¶ 28    We also reject Lyle's contention that article VIII(a) authorizes ATG's appointment as a successor trustee. Specifically, he argues that a vacancy was not required to appoint a successor trustee and that even if it was, a vacancy existed due to Harris's resignation more than 30 years ago. As to the first of these related contentions, Lyle primarily relies on the trial court's 1984 order stating that "[t]he court reforms the terms of clause (a) of Article VIII *** to provide for the appointment of one or more successor trustees of any of the three trusts *** by a majority in the number of the adult income beneficiaries of such trust."

¶ 29    We find that the court's order is ambiguous. Reviewing courts generally determine a court's intention through an order's language, but where such language is ambiguous, it is subject to interpretation. *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 512 (2001). The order should then be construed in the context of the record and the circumstances that existed when the order was entered. *Id.* While Lyle contends this order entirely replaced the prior article VIII(a), Di Cola has argued that the order did not replace the entire provision so that the two must be read together. In reforming article VIII(a), the court did not recite the new version of that provision verbatim. In addition, while the order states that it reforms "the terms" of the provision, the order does not specify whether it purports to reform all or some of those terms. The language of the order considered alone is

- 8 -

susceptible to either meaning. Accordingly, we consider the relevant procedural circumstances that led to its entry.

¶ 30    As originally drafted by the Settlor, Bowes was the individual trustee. Harris, or the entity that would become its legal successor in the future, was appointed as corporate trustee. While the Settlor created a mechanism to appoint an individual successor trustee, through Sidley & Austin, the Settlor created no mechanism to appoint a corporate successor trustee. The trial court subsequently granted Harris's request to resign, finding that the will "does not require the appointment of a successor corporate trustee" and ordering that "Murray II is the sole trustee under the will." Lyle does not ask this court to directly set aside and disregard this order; rather, he urges us to adopt a meaning that is simply not supported by the record.

¶ 31    Contrary to Lyle's disingenuous suggestion, this order clearly eliminated the corporate trustee position held by Harris. The order did not qualify its determination by stating that a successor corporate trustee was not required *at this time*. In addition, Lyle has failed to articulate why the Settlor would have intended for a successor corporate trustee to be appointed now when the Settlor had not intended that a successor corporate trustee be appointed in 1982. The only difference is that in 1982, Lyle preferred the individual trustee's decisions over the corporate trustee's decisions, whereas now, Lyle dislikes the individual trustee's decisions. See *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 59 (2009) (finding that the doctrine of judicial estoppel is intended to protect the court system's integrity by preventing litigants from deliberately shifting their positions to suit the immediate circumstances). This is not an attempt to impose a corporate check-and-balance, as Lyle suggests; rather it is redolent of gamesmanship. Furthermore, Lyle argues the trial court's 1982 finding that a successor corporate trustee was not *required*, did not *prohibit* one from being appointed. We find the more appropriate inquiry to be, however, whether the trust, following that court's order, *authorized* the appointment of a successor corporate trustee. We find that it did not. See *Andris v. Biehl*, 27 Ill. App. 2d 393, 398-99 (1960) (finding that the court could not appoint a co-trustee or successor trustee where not provided for in the instrument creating the trust). The trial court clearly stated, without qualification, that Murray was the sole trustee and the beneficiaries reaped the benefit of that order. Following the 1982 order, no vacancy existed. See *id*. at 395-99 (where the beneficiary failed to show grounds for removing the individual trustees, the trial court erred by appointing a corporate trustee to serve alongside the existing ones, as no vacancy existed).

¶ 32    This brings us to the catalyst for the ambiguous 1984 order at issue. As stated, Sidley & Austin had originally been charged with naming successor individual trustees under article VIII(a) in the event that "no individual [was] acting as Trustee," language which indisputably contemplated a vacancy. See 760 ILCS 5/13 (West 2010) (contemplating that a vacancy requiring the appointment of a successor trustee by a majority of the beneficiaries occurs upon the last trustee's "death, resignation, refusal or inability to act of any trustee"); George W. Howard III, *Successor Trustees and Cotrustees*, in Estate Planning for Illinois Attorneys: The Basics and Beyond § 8.32 (Ill. Inst. for Cont. Legal Educ. 2012) (discussing the appointment of a successor trustee due to resignation, death or incapacity). No dispute arose regarding the circumstances in which a successor would be appointed; rather, in 1984, Sidley & Austin no longer wished to be charged with appointing an individual successor should circumstances require. Murray suggested a modification that would allow the appointment of

successor trustees in any of the individual trusts if a "majority in number of the adult income beneficiaries" so desired.

¶ 33　In the context in which it arose, it is clear that the court's 1984 order did not intend to alter article VIII(a)'s proviso that appointing a successor would be appropriate when "no individual [was] acting as Trustee," nor did it intend to revive the *corporate* trustee position. It was solely intended to satisfy what had previously been Sidley and Austin's function: appointing a successor individual trustee upon a vacancy. In addition, we are not persuaded by Lyle's suggestion that it would be inappropriate to apply the vacancy qualification to Lyle's attempt to appoint a *corporate* trustee because that language expressly applied to an *individual* trustee. The reason for this is clear. As the court essentially found in 1982, the Settlor did not contemplate the appointment of a successor corporate trustee under any circumstances. Moreover, although Lyle argues that the order permitted the appointment of "one *or more* successor trustees" (emphasis added), the order when read in its entirety provided for the appointment "of one or more successor trustees *of any of the three trusts*" (emphasis added). This merely reflects that multiple trusts may require multiple trustees. Thus, the order did not authorize the appointment of a successor corporate trustee for Lyle's trust. Because Lyle failed to demonstrate the appointment of a substitute or successor trustee was required, the trial court properly entered summary judgment in favor of Di Cola.

¶ 34　C. Attorney Fees

¶ 35　Finally, Lyle contends the trial court erred in awarding Di Cola attorney fees because she failed to remain neutral in this action. Whether the court has authority to grant attorney fees is a question of law we review *de novo*, whereas a court's decision to award authorized fees is reviewed for an abuse of discretion. *Grate v. Grzetich*, 373 Ill. App. 3d 228, 231 (2007). We find no error.

¶ 36　Generally, a trustee found to be faultless is entitled to reimbursement from the trust fund for his expenses properly incurred in administering or defending the trust. *Jewish Hospital of St. Louis, Missouri v. Boatmen's National Bank of Belleville*, 261 Ill. App. 3d 750 (1994); *Webbe v. First National Bank & Trust Co. of Barrington*, 139 Ill. App. 3d 806, 810 (1985). Similarly, article VII(b) of the trust specifically authorized Di Cola to employee legal counsel as deemed advisable and article VII(e) stated that Di Cola "shall be reimbursed out of the trust for all expenses incurred in its management and conservation." Lyle asserts, however, that "a fiduciary's attorney fees will not be awarded when the fiduciary takes a litigious position favoring one *interpretation* of the trust, to the detriment of a beneficiary" (emphasis added), relying on *Northern Trust Co. v. Heuer*, 202 Ill. App. 3d 1066, 1071 (1990).

¶ 37　First, we correct Lyle's misstatement of law. In *Northern Trust Co.*, the reviewing court stated that where a trustee favors one *beneficiary* over another, the trustee is not entitled to attorney fees and costs. *Id.* This is due to the trustee's duty to deal impartially with all beneficiaries. *Id.* Accordingly, *Northern Trust Co.* does not prohibit a trustee from interpreting a trust in a manner that is unfavorable to one beneficiary's wishes but, rather, prohibits a trustee from favoring one beneficiary over another. Furthermore, while we acknowledge this general rule, the specific trust before us authorized the trustee to make unequal distributions and, thus, favor one beneficiary over another where she sees fit.

¶ 38　Before Lyle filed his complaint, Di Cola attempted to conserve the assets of the trust for the benefit of all beneficiaries, including Lyle, rather than granting every disbursement

requested. Lyle then commenced the present action naming Di Cola as a defendant and raising allegations of misconduct that were never proven. See also *Webbe*, 139 Ill. App. 3d at 810 (where a beneficiary files a groundless complaint against the trustee, the trustee's attorney fees and expenses in defending the charge are to be paid out of the complainant's share of the trust estate and not charged against the general fund shared by the cobeneficiaries, who did not join with the plaintiff in his action). Thus, Di Cola would have had no need for counsel but for Lyle's actions. Although the ultimate issue was whether ATG could be appointed as a second trustee, Lyle has not explained how anything Di Cola has done with respect to that issue favored one beneficiary over another. Moreover, we cannot agree with Lyle that Di Cola defending her position as trustee, a position which was authorized by the trust, was entirely "self-serving." The trial court properly awarded fees under these circumstances.

¶ 39    For the same reasons, we grant Di Cola's request for an award of attorney fees incurred in defending this appeal. As stated, the trust provided that Di Cola "shall be reimbursed out of the trust for all expenses incurred in its management and conservation." We see no reason why the reimbursement to which Di Cola was entitled should not benefit her estate or the attorneys to whom she may still owe payment with respect to these proceedings, depending on their prior fee arrangement. In addition, while the answer to the petition for rehearing, filed solely on Lyle's behalf, conceded the amount of appellate attorney fees requested by Di Cola, we have not been presented with a concession in that regard by all of the beneficiaries, Accordingly, we remand this case for the trial court to determine not only the appropriate amount of fees to be awarded, but the appropriate individual or entity to receive that payment.

¶ 40    In conclusion, the trial court properly granted summary judgment in favor of Di Cola where the terms of the trust did not grant the beneficiaries the authority to appoint a second trustee to confiscate Di Cola's duties and authority. The beneficiaries' agreements purporting to accomplish just that were ineffective. Moreover, the award of attorney fees was entirely appropriate under these circumstances and we similarly order that the trial court enter an appropriate award of attorney fees for pursuit of this appeal in accordance with our opinion.

¶ 41    For the foregoing reasons, we affirm the trial court's judgment and remand for further proceedings consistent with our opinion.

¶ 42    Affirmed and remanded.